In the Matter of the Probate of the Will of MILTON BUDLONG, Deceased.

A judgment of the General Term reversing upon the facts a decree of a surrogate admitting a will to probate and directing a new trial of the questions of fact by a jury, is not reviewable in this court.

Such a judgment is not an interlocutory judgment, or an intermediate order affecting the final judgment, within the meaning of the Code of Civil Procedure (§§ 1316, 1317), and so is not brought up for review by appeal from a judgment of the General Term affirming a judgment entered upon the verdict on trial of the issue of fact by a jury.

Upon trial of the issues of fact before a jury, where probate of a will was contested upon the ground of undue influence, the evidence was to this effect: the testator was seventy-nine years old when he made the will; he was then seriously ill and in expectation of death; his mental and physical powers, which had been remarkably strong and vigorous, had begun to weaken. Before his illness he had declared it to be his intention not to make a will, so that his children should share equally, and his acts and declarations showed that all of his children were equally dear to him. Two of his sons, who received the greater part of the estate, were with him during his illness, and procured the attorney who drew the will. L., another son, was in another state, attempting to obtain a divorce from his wife, who was contesting the matter. The feelings of the father were strongly enlisted in favor of L. and against the wife. L. wrote a letter to a sister, with a request that she should show it to his father, containing statements to the effect that another sister, the contestant, who was practically disinherited by the will, was advising and assisting the wife in her defense, and the letter bitterly reflected upon the sister's conduct. The letter was shown to testator, and the supposed action of the sister in taking part against her brother caused ill feeling on the part of the testator toward her. It appeared that the statements in the letter were untrue, and that the writer intentionally misrepresented his sister's conduct. The court instructed the jury that if L. wrote the letter with the design that it should reach his father and influence him in the disposition of his property, and said letter did in fact influence him to disinherit the daughter, a case of undue influence and fraud was made out; but if such statements were not false and were not designed to and did not influence the testator in the disposition of his property, then the letter was harmless. Held, no error.

The court charged the jury that, though the testator's will might have been grossly unjust, that fact was of no consequence if it was satisfactory to the testator and was made in accordance with his preconceived design and intention, and not through the influence of another. The court then added that if, under all the circumstances, the jury found

the will to be unnatural in its provisions and inconsistent with the testator's duties and obligations to the different members of his family, it imposed upon the proponents the duty of giving some reasonable explanation of its unnatural character, or at least of showing it was not the result of mental.defect, obliquity or perversion. This addition was excepted to. *Held*, that the portion of the charge excepted to was to be considered in connection with what preceded it, and as a whole the charge was not objectionable.

Reported below, 54 Hun, 131.

(Argued April 15, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made November 4, 1889, which affirmed a judgment refusing to admit to probate the will of Milton Budlong, deceased, entered upon a verdict, and also from an order of said General Term, made August 12, 1887, which reversed the decree of the surrogate of Monroe county, admitting to probate said will and granting a new trial, and from an order of said court made February 28, 1889, which denied a motion for a new trial on the minutes, and from another order of said court made December 28, 1888.

The facts, so far as material, are stated in the opinion.

*J. A. Stull* for appellant. The testator had the right to make this will, however capricious, cruel, or unjust it may be regarded by the opinions of others ; nor will its validity depend either on the justice of his prejudices or the soundness of his reasoning, or even necessarily upon a mistake of fact on his part. (*Reynolds* v. *Root*, 62 Barb. 253 ; *Clapp* v. *Fullerton*, 34 N. Y. 190 ; *Horn* v. *Pullman*, 72 id. 269 ; *Brick* v. *Brick*, 66 id. 144.) It was a radical and fundamental error of both General Terms — especially the former — that in deciding the case they failed to discriminate between a mere supposed general influence by proponents upon their father, which though it might be claimed to be prejudicial to the contestant, was not consciously exerted for the purpose of affecting his testamentary intentions regarding her ; and an influence specially

directed to the matter of influencing him in the particular matter of making his will. And in assuming that the former kind of influence would, if it existed, render the will invalid as well as the latter. (*Woodward* v. *Jones*, 9 Strob. 522; *Seguine* v. *Seguine*, 4 Abb. Ct. App. Dec. 191; *Porter* v. *McAlpine*, 3 Dem. 114; *Wade* v. *Holbrook*, 3 Redf. 378; *Booth* v. *Kitchen*, Id. 352; *McCoy* v. *McCoy*, 4 id. 58; *In re Smith*, 3 N. Y. S. R. 137; *In re Hatton*, Id. 213; *Moore* v. *Bleauvelt*, 15 N. J. Eq. 359; Shouler on Wills, § 232.) Decedent lived nearly four months after the will was executed. After the will was made and executed, and during and after his recovery from his sickness, he frequently referred to the will and its provisions, and expressed himself as satisfied therewith, and refused to change it in any particular. This negatives the idea of undue influence. (*Floyd* v. *Floyd*, 3 Strob. 44; *Small* v. *Small*, 4 Greenl. 230.) The claim of undue influence and fraud is untenable. (9 Strob. 352; *Brick* v. *Brick*, 66 N. Y. 144; *C. A. Society* v. *Loveridge*, 70 id. 387; *Hazard* v. *Hefford*, 2 Hun, 445; *Booth* v. *Kitchen*, 3 Redf. 67; *Merritt* v. *Rolston*, Id. 220; *In re Martin*, 98 N. Y. 193; *Lathan* v. *Udell*, 38 Mich. 258.) The trial court on the second trial before the jury erred in admitting evidence of alleged conduct, admissions or declarations of each proponent severally, made (if made or done at all) separately and apart from the other proponents, and received against the interests of said other proponents. The interest of each proponent in their bequests and devises was a separate and not joint interest. (Schouler on Wills, § 244.) It is submitted that error was committed also in the reception of many letters in evidence, written by Mrs. Louisa Budlong (as the amanuensis of Milton Budlong as was claimed) to his daughter, Mrs. Cole and proven by her testimony. (Code Civ. Pro. § 829.) The testimony of George D. Cole, relating to conversations, etc., had between him and decedent was incompetent and inadmissible, and in violation of Section 829 of the Code of Civil Procedure, and the exceptions thereto were well taken. (*Steele* v. *Ward*, 30 Hun, 555; *In re Hewett*, 21 Wkly. Dig. 296.) The court erred in charging that if the will

was unnatural, it cast upon proponents the burden of showing some reasonable explanation of its unnatural character; or at least showing that it was not a result of mental defect, obliquity or perversion. (*Zimlich* v. *Zimlich*, 14 S. W. Rep. 837.) The requests to charge as to undue influence stated sound and correct principles of law, which had not been sufficiently stated by the court to the jury. (Schouler on Wills, § 225; *Lathan* v. *Udell*, 38. Mich. 258; *Schailer* v. *Brumstead*, 99 Mass. 121.)

*E. A. Nash* for respondent. This court cannot review the judgment of the Supreme Court reversing a decree of the surrogate admitting a will to probate and awarding issues of fact to be tried by a jury. (Code Civ. Pro. §§ 2585, 2588; *Sutton* v. *Ray*, 72 N. Y. 482; *Burger* v. *Burger*, 111 id. 523; *Marvin* v. *Marvin*, 3 Abb. Ct. App. Dec. 192; *In re Ross*, 87 N. Y. 514.) The court properly submitted to the jury the question of the intent with which Levi made the charges against Mrs. Cole to his father. (*Dexter* v. *Spear*, 4 Mason, 115; Starkie on Ev. 572; *A. P. R. Co.* v. *Douglass*, 12 Barb. 557; 1 Bishop on Crim. Law, § 368.) The proponents' exception to the charge that if at the time Levi wrote this letter, he knew the contents of it to be untrue, and he wrote it with a design that it should reach his father and influence him in the disposition of his property, and it did in fact reach his father and influence him to disinherit Mrs. Cole, the jury should answer the last question in the affirmative, is unavailable. (Redf. on Wills, 522; *Tyler* v. *Gardiner*, 35 N. Y. 559.) If there was any evidence that these brothers entered into a combination and confederacy to prejudice Mrs. Cole in the estimation of her father, and he was thereby induced to make this will, the rulings of the court upon the admission of their declarations and the submission of the question of a conspiracy to the jury were correct. (1 Greenl. on Ev. § 111.) The declarations of the proponents were admissible upon other grounds than a conspiracy. (1 Redf. on Wills, 537; *Julke* v. *Adam*, 1 Redf. 460.) The charge of the court that, if under all the circum-

stances of the case the jury found that this will was unnatural in its provisions and inconsistent with the duties and obligations of the testator to the different members of his family, it imposed upon the proponents the duty of giving some reasonable explanation of its unnatural character, or, at least, of showing that it was not the result of mental defect, obliquity, or perversion, was correct. (1 Redf. on Wills, 537 ; *Harrel* v. *Harrel*, 1 Duvall, 203 ; *Mundy* v. *Taylor*, 7 Bush, 491 ; *Mowey* v. *Siber*, 2 Bradf. 133 ; *Lee* v. *Dill*, 11 Abb. Pr. 214 ; 35 N. Y. 593.)

O'BRIEN, J.   Milton Budlong died on the 20th day of April, 1880, having made a will on the 4th of January previous, in which he disposed of his real and personal estate, amounting to considerable over $50,000.   The validity of this will was the sole question involved in these proceedings.   He left a widow, three sons and three daughters surviving, who were the natural objects of his bounty in the distribution of his estate.   The will provided for the comfortable support of the widow, according to her station in life, which support was in lieu of dower, and made a charge upon the real estate.   To one of the daughters he devised two houses and lots in the village of Fairport ; to another he gave a money legacy of $5,000.   He gave the residue of his real and personal estate to two of the sons, in the proportion of one-third to one and two-thirds to the other, the larger share, however, being chargeable with a legacy of $5,000 to the third son, Levi S. Budlong.   To the other daughter, Mrs. Louisa J. Cole, who is the contestant of the will, he gave a legacy of five dollars.   The three sons were named as executors, and, having petitioned the surrogate of Monroe county to admit the will to probate, the daughter above named filed objections that the instrument was not the will of the deceased ; that at the time of its execution he was not capable of making a will, and that the proponents, or some of them, procured its execution by means of deceit, fraud and undue influence. Upon a trial, in which a large volume of testimony was taken, the surrogate made a decree adjudging the will to be valid and

admitting it to probate. While the case was pending before the surrogate the contestant died, and her heirs at law were substituted in her place. The General Term, upon their appeal, reversed the judgment and directed a new trial upon two specific issues of fact by a jury. These questions were whether the deceased was of sound mind at the time of executing the instrument, and whether its execution was procured by fraud and undue influence. The new trial resulted in a verdict of the jury, finding that the deceased was of sound mind when the instrument was executed and capable of making a will, but that its execution was procured by undue influence and fraud. The judgment in favor of the contestants entered upon this verdict has been affirmed by the General Term. The proponents of the will in their notice of appeal to this court from the last decision of the General Term seek to review, not only the judgment entered on the verdict and subsequent orders, but also the judgment and order of the General Term reversing the decree of the surrogate and granting a new trial; and the papers submitted upon this appeal contain the record of all the proceedings before the surrogate, including his findings, and the opinion and judgment of the General Term on appeal therefrom. This court cannot review the judgment of the General Term reversing, upon the facts, a decree of the surrogate admitting a will to probate and directing a new trial before a jury of questions of fact. (*Sutton* v. *Ray*, 72 N. Y. 482; *Burger* v. *Burger*, 111 id. 523.) Nor does an appeal from the last judgment of the General Term bring here for review the first one under §§ 1316, 1317 of the Code of Civil Procedure, as it is not within the meaning of these sections either an interlocutory judgment or an intermediate order necessarily affecting the final judgment. The only record that is properly before us is that of the trial at the Circuit, and we can review only the judgment entered thereon and subsequent orders and proceedings. The judgment is based upon a finding by the jury that the instrument purporting to be the will of the deceased was not his free and voluntary act, but the result of undue influence and fraud, by

means of which his mind was prejudiced against one of his children by one or more of the others and his natural affection for her perverted. It must be admitted that the jury would have been warranted in taking a contrary view of the facts, but at the same time their finding is not, by any means, so destitute of evidence for its support as to authorize this court to interfere. The deceased was seventy-nine years old when he made the will. His mental and physical powers, which had been remarkably strong and vigorous through life, began to weaken. He was attacked with a severe illness, from which it was supposed by the family he could not recover, and it was during this illness and in expectation of death as the result of it, that the will was executed. The two sons who received the greater part of the estate were with him during his sickness, and one or both of them procured the attorney who drew the instrument. There was some proof of his declarations, made shortly before this illness, that he did not intend to make a will but to die intestate, to the end that all his children should share equally in his estate under the law of the state. The two sons who were preferred were men of large property in their own right, and up to a time not long before the will was made, the acts and declarations of the father tended to show that all his children were equally dear to him. The claim of the contestants was that the sudden change in the father's affections towards his daughter, which resulted in such an apparently unjust discrimination against her, as appears on the face of the will, was brought about by means of a letter shown and read to him by another daughter, Mrs. Hunt, a short time before the execution of the instrument. This letter was one of the last of a series of events which were pressed upon the jury as proof that the father's affections had become alienated from his daughter, the contestant, by misrepresentation, resulting in ignoring her in the final distribution of his property. It appeared that some nineteen years before the death of the father, Levi S. Budlong, one of the sons, married a domestic in the family. The father felt humiliated and grieved in consequence of this alliance, threatened to disin-

herit his son and refused to be reconciled to him or his wife. After the lapse of some time his attitude towards them softened and he became more friendly, regarding the marriage as an accomplished fact and manifesting a disposition to make the best of it. The marriage, however, between the parties themselves proved to be an unhappy one. There is evidence in the case tending to show that the husband ill treated the wife, and that Mrs. Cole, his sister, was a witness to at least one violent assault upon her, and that she on that occasion sharply reproached her brother for such conduct. During the year previous to the execution of the will, Levi went to the state of Iowa for the purpose of obtaining a divorce from his wife on the ground of cruel and inhuman treatment. In this controversy the old aversion of the father towards the marriage revived, and his feelings were strongly enlisted on the side of his son and in favor of the divorce. But it appears that the wife resisted the proceedings for divorce, consulted counsel in this state, followed the husband to Iowa and materially interfered with his plans, if she did not succeed in entirely defeating them. This was a bitter disappointment to Levi, and he attributed his failure to the instigation, assistance and advice of Mrs. Cole to his wife, or at least pretended that she had joined his wife in opposition to him. On the 2d of October, 1879, Levi addressed a long letter from Iowa to his other sister, Mrs. Hunt, who lived near her father. In this letter he took rather a gloomy view of the result of the divorce suit, which appeared to be pending, described the visit of his wife to the west and its effect upon the suit, and reflected bitterly upon the conduct of Mrs. Cole, in assisting and advising his wife, with the result of bringing much trouble and disappointment upon him. He requested the sister, to whom the letter was written, to show it to his father, and she complied with the request. Some proof was given of the statements of the father after he had seen the letter, tending to show ill feeling toward Mrs. Cole for joining in the contest against her brother, who was described by the father as his favorite son. Proof was submitted to the jury, consisting mostly of circumstances and facts, tending to

show that the reflections upon Mrs. Cole, contained in the letter, were substantially, if not wholly without foundation in fact, and that the writer intentionally misrepresented her conduct.

Some proof was also given of declarations made by Levi, tending to show that he had advised his father to make a will, and that if he left Mrs. Cole anything, he would litigate with her as long as he had a dollar to spend in that way. The letter and the other evidence in the case furnished some proof that Levi attempted to, and did, create in the mind of the testator a feeling of prejudice and aversion towards his daughter, with reference to the disposition of his property, which found expression in the will, so far as it relates to her. The court instructed the jury that if Levi wrote the letter, knowing that its statements were untrue, with the design that it should reach his father and influence him in the disposition of his property, and that it did in fact influence him to disinherit Mrs. Cole, then a case of undue influence and fraud was made out. But that if they were not false, and were not designed to, and did not in fact, influence the father in the disposition of his property, then the letter was harmless. Sufficient reference has been made to the evidence to show that the main question in the case, and around which the parties contended, was one of fact that must be regarded as having been put at rest by the verdict of the jury. The counsel for the proponents, by exceptions taken to the charge above referred to, and in the argument in this court, contends that the rule stated by the learned trial judge was erroneous. His position is that as the statements in the letter, whether true or false, and with whatever intent written, related solely to the relations and conduct of Mrs. Cole towards her brother, and in no manner to her feelings, conduct or relations towards her father, they could have no connection with the will, but related to matters entirely extraneous to it. That at most the statements could not be regarded as anything beyond the complaints of one child against another to the father, without any reference to the disposition of property, and, therefore, could not legally affect any will subse-

quently made. The undue influence and fraud which the law guards against may be exercised in an almost infinite variety of ways. Prejudice and aversion to a child may be created in the mind of a testator by misrepresentation of the conduct and feelings of this child towards another which, in connection with other facts, such as were shown in this case, may be sufficient to affect the validity of a will in which the child in regard to whom the misrepresentations were made, is ignored in the distribution of the father's estate by will, and this is especially true when no other reason is apparent for a grossly unjust and unequal division among children, with an apparently equal claim upon the testator's bounty. (*Tyler* v. *Gardiner*, 35 N. Y. 559 ; Red. Am. Cases on Wills, note p. 522.) In the course of a very clear and, on the whole, impartial charge, the learned judge who presided at the trial, said to the jury that " if, under all the circumstances of the case, you find that this will was unnatural in its provisions and inconsistent with the duties and obligations of the testator to the different members of his family, it imposes upon the proponents the duty of giving some reasonable explanation of its unnatural character, or at least of showing that it was not the result of mental defect, obliquity or perversion." The counsel for the proponents excepted to this part of the charge. It must be read in connection with what preceded, in which the court said that though the will might have been grossly unjust in its provisions, yet that fact was of no consequence if it was satisfactory to the party who made it, as every man had the right to dispose of his property according to his own will. That if it was the testator's preconceived design and intention, calmly entered into, to disinherit his daughter, Mrs. Cole, he had a perfect right to do so, and none of us have any right to complain of the exercise of that right, provided in doing so he exercised his own will and was not influenced by the will of another. The fair construction of the portion of the charge excepted to is not that the unequal division of the testator's property, apparent on the face of the will, raised a presumption of undue influence or fraud, which the proponents were

Statement of case.

called upon to explain; but, if upon all the proof in the case, the jury should find that the will was in fact contrary to the dictates of natural affection and was, under all the circumstances, unnatural in its dispositions, so far its provisions would be evidence of mental defect, obliquity or perversion of mind which would require explanation. Thus understood and read in connection with the other propositions, that part of the charge which was the subject of this exception was not objectionable. A learned author on wills has stated the principle in the following language, which we think expresses substantially the same idea as that intended to be conveyed by the charge, if it does not go even farther: "But gross inequality in the dispositions of the instrument, when no reason for it is suggested either in the will, or otherwise, may change the burden and require explanation on the part of those who support the will to induce the belief that it was the free and deliberate act of a rational, self-poised and clearly disposing mind." (1 Redf. on Wills, 557; Redf. Am. Case on Wills, 298, note.) There are numerous other exceptions in the record, but we think they were correctly disposed of in the court below (54 Hun, 131), and do not call for any special notice here.

The judgment should be affirmed, with costs payable out of the estate.

All concur.

Judgment affirmed.