DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Decree of the County Court of Cayuga county appealed from affirmed, with costs.

---

In the Matter of the Probate of the Last Will and Testament of ALMIRA PIKE, Deceased.

SOPHIA T. BIRDSALL, Appellant; ANNA E. FORBUSH and Another, Respondents.

*Capacity to make a will — burden of proving undue influence where the testatrix is feeble by reason of old age — questions of fact considered de novo on an appeal from a surrogate's decree refusing probate.*

The fact that a testatrix has the feebleness of old age, both mentally and physically, does not necessarily render her incapable of making a will if she is rational and has sufficient capacity to comprehend the condition of her property, her relations to the objects of her bounty and the scope and bearing of the provisions of her will.

While the feeble condition of a testatrix renders her more susceptible to artifice, fraud or undue influence, nevertheless, the burden of showing undue influence, in proceedings brought for the probate of an instrument as the last will and testament of a decedent, rests upon the contestants.

A testatrix has the right to dispose of her property by will to a person recently a stranger, if she is competent to make a will, and the fact of her isolation from her relatives detracts somewhat from the apparent significance of an omission to make them objects of her bounty.

Where, upon an appeal from a decree of a Surrogate's Court refusing to admit to probate an instrument as the last will and testament of a decedent, the record states that it contains all the evidence given upon the hearing, the

83 327
47ap181
83h 327
69 AD⁴475

questions of fact involved are before the General Term for review, and are to be considered by it *de novo*, in pursuance of the provisions of section 2586 of the Code of Civil Procedure.

APPEAL by the proponent, Sophia T. Birdsall, the executrix named in the alleged last will and testament of Almira Pike, deceased, from a decree of the Surrogate's Court of the county of Monroe, entered in the office of the Monroe County Surrogate's Court on the 28th day of September, 1893, denying probate to the alleged last will and testament of Almira Pike, deceased, on the ground that the testatrix was incompetent to make a valid will, being of unsound mind, and that she was unduly influenced in making the same by the proponent.

*Walter S. Hubbell,* for the appellant.

*William E. Werner,* for the respondents.

BRADLEY, J. :

By the terms of her propounded will bearing date December 26, 1892, Almira Pike, having directed the payment of her debts and funeral expenses, and the payment to the city of Rochester of a suitable sum to keep her burial place in repair, gave all the rest, residue and remainder of her property and estate, real and personal, to Sophia T. Birdsall, upon the condition that she remained with and attended upon the decedent during the life of the latter, and nominated her to be the executrix of the will. In the proceeding instituted by the petition of Mrs. Birdsall for its probate, Charles H. Newton and Anna E. Forbush appeared as contestants. The probate of the instrument as the will of the decedent was denied upon the ground that she was not competent to make a will, and that she was unduly influenced by Sophia T. Birdsall to make it.

The will in manner and form was duly executed, and had *prima facie* support as a valid will by the evidence of the subscribing witnesses. The questions arising upon the evidence introduced at the hearing were those of fact, having relation to the capacity of the decedent, and to the causes by which the making of the instrument by her was induced. She was a childless widow, eighty-two years of age, and had resided for many years in the city of Rochester. For some years prior to and until in November, 1892, she had been

attended by a Miss Scott, who then, having become insane, was taken to an asylum. Thereupon the proponent, through a person acquainted with her, was recommended and introduced to the decedent. This was about the middle of November, 1892. The will was made the twenty-sixth of December following, and Mrs. Pike died January 28, 1893.

It may be observed that while the contestants were her heirs and next of kin, she never had seen or known them. They resided in the State of Massachusetts, in which State she in her early life had lived, and so far as appears she had no communication with any relatives there or elsewhere. She lived substantially alone, having intimate and friendly relations with at least some of her neighbors. This isolation of herself from her relatives detracts somewhat from the apparent significance of the omission to make them objects of her bounty. But evidence on the part of the contestants was given tending to prove that at the time the will was made she was in such feeble condition mentally as to render her incompetent to make testamentary disposition of her property. This evidence was in the testimony of witnesses to the effect that within the year or more preceding her death there had been an apparent change in her mental condition; that she failed to recognize some of her friends and acquaintances when they called upon her; that she manifested less interest in her own affairs; that she would carry on no conversation, and at times acted queerly, as they expressed it, and failed on certain occasions to observe the amount of sums of money paid to her, or to correctly recognize and state the denomination of bills and coin when she handed them out to be used for her purposes. And some medical opinions, based upon hypothetical questions, were to the effect that Mrs. Pike was not rational at the time in question. As bearing upon her competency to take care of her property and upon her susceptibility to influence, it was proved that a few years prior to her death she loaned to one Pierpont $3,000, and took the note of him and his wife payable in three years without other security, and that Pierpont turned out to be unable to pay the note, and that in February, 1890, she conveyed to Edwin Van Vorst a house and lot near that occupied by her, by deed, expressing the consideration of one dollar and reserving to herself a life estate in the

FIFTH DEPARTMENT, DECEMBER TERM, 1894.    [Vol. 83.

premises; that she received no greater consideration than that expressed in the deed. The amount so loaned constituted the larger portion of the money she then had, and her only real property remaining, other than such life estate, was the house and lot where she resided up to the time of her death. Van Vorst had occupied the house so conveyed to him a number of years before the deed was made, and thereafter he paid her rent at the rate of thirteen dollars per month. On the part of the proponent evidence was given to the effect that Mrs. Pike, after she had made the deed, referring to that fact, stated that the premises belonged to Van Vorst, and that the deed to him reserving to her a life estate was as she desired it, and that she expressed friendship for Mr. and Mrs. Van Vorst; that in respect to the loan to Pierpont she said substantially that she had known him for a long time; had acted as nurse in his family some years before; that she thought him honest; that she recognized the fact that he was unable to pay, and that the money was lost. And further evidence on the part of the proponent on the subject of the mental capacity and condition of Mrs. Pike for a period of time covering that when the will was made, and up to near the time of her death, tended to prove that she was intelligent, maintained her acquaintance with and relation to her friends and neighbors, recognized them, understood what she did and was rational.

It is unnecessary to refer specifically to the evidence pro and con upon the subject. The evidence is in the testimony of a large number of witnesses and there is a marked conflict in that of those called by the respective parties bearing upon the capacity and condition of the decedent. It may be assumed that she had the feebleness of old age, both mentally and physically. This did not necessarily render her incapable of making a will, nor was she so if she was rational and had sufficient capacity to comprehend the condition of her property, her relations to the objects of her bounty and the scope and bearing of the provisions of her will. (*Van Guysling* v. *Van Kuren*, 35 N. Y. 70; *Horn* v. *Pullman*, 72 id. 269.)

The feeble condition of the decedent rendered her the more susceptible to artifice, fraud or undue influence. While the burden of showing undue influence was with the contestants it cannot well be said that there was no evidence bearing upon that proposition.

(*Tyler* v. *Gardiner*, 35 N. Y. 559; *McLaughlin* v. *McDevitt*, 63 id. 213; *Matter of Will of Budlong*, 126 id. 423.) The fact that Mrs. Birdsall, until a month and a half before the will was made, had been a stranger to the decedent, and that she was the sole attendant having the care of her when it was made, together with the fact that Miss Scott, who had been in that relation to her for some years and then in the asylum, was not recognized as an object of her bounty, are circumstances for consideration upon the question whether or not the will expressed the voluntary purpose of the decedent and was her voluntary act. (*Rollwagen* v. *Rollwagen*, 63 N. Y. 504.) There is, however, some evidence tending to prove that Miss Scott in her attendance and care upon Mrs. Pike had not been entirely satisfactory to the latter, while the proponent had been quite so, and that the decedent was much pleased with her attendance and care, and desired the continuance of such relation during her life, a period then uncertain, and during which, as age and feebleness increased, the care required might become more indispensable and substantially incessant, and the burden as well as the responsibility of it greater. Whether or how long she might be entirely helpless was unknown at the time the will was made. While the fact that Mrs. Birdsall had until recently been a stranger to the decedent is one for consideration upon both questions, the latter may have been prompted by reasons satisfactory to herself to dispose of her property as she sought to do it upon the condition expressed in the will. Her right to do this cannot be questioned if she was competent to make a will, and if the one in question was her voluntary act. (*Matter of Mondorf*, 110 N. Y. 450.)

It appears by the record that it contains all the evidence given upon the hearing, and, therefore, the questions of fact are for review and to be considered *de novo*. (Code Civ. Proc. § 2586.)

We are not entirely satisfied with the conclusion reached by the surrogate upon the facts, and as to what the result upon the evidence should be is a question of doubt. The matter should be sent to a jury. (*Howland* v. *Taylor*, 53 N. Y. 627; *Matter of Lansing*, 17 N. Y. St. Repr. 440; *Van Orman* v. *Van Orman*, 34 id. 824.)

The decree of the surrogate should, therefore, be reversed, with costs of this appeal payable out of the estate to abide the event of a new trial in the Circuit Court of Monroe county of the questions:

*First.* At the time of the execution of the will, on December 26, 1892, did the deceased have testamentary capacity?

*Second.* Was the instrument purporting to be her last will and testament voluntarily made by her?

*Third.* Was the instrument purporting to be the last will and testament of the decedent obtained, and the execution thereof procured, by fraud, circumvention or undue influence practiced upon her?

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Decree of the Surrogate's Court of Monroe county appealed from reversed and a trial of the issues stated in the opinion ordered before a jury in the Circuit Court of Monroe county, with costs of this appeal payable out of the estate to abide the event.