In the Matter of the Probate of the Will of CHARLES A. LIMBERG, Deceased.

LUCILLE LIMBERG et al., by Their General Guardian, PAUL KALLMEYER, Appellants; WILLIAM C. LIMBERG, Respondent.

Argued January 4, 1938; decided March 8, 1938.

*Matthew J. Shevlin* and *Franklin F. Russell* for appellants. It was the duty of the proponent of the paper offered for probate as the last will of the decedent to satisfy the court and jury that such will was the free and deliberate act of a rational, self-poised and clearly disposing mind. (*Marx* v. *McGlynn*, 88 N. Y. 357; *Matter of Putnam*, 257 N. Y. 140; *Matter of Anna*, 248 N. Y. 421; *Matter of Budlong*, 126 N. Y. 423; *Matter of Smith*, 95 N. Y. 516; *Rollwagen* v. *Rollwagen*, 63 N. Y. 504; *Delafield* v. *Parish*, 25 N. Y. 9; *Waterman* v. *Whitney*, 11 N. Y. 157.) The evidence adduced by the contestants was sufficient to warrant the submission of the question of undue influence and fraud to the jury. (*Rollwagen* v. *Rollwagen*, 63 N. Y. 504; *Delafield* v. *Parish*, 25 N. Y. 9; *Matter of Anna*, 248 N. Y. 421; *Matter of Matulewicz*,

243 App. Div. 204; *Eckert* v. *Page*, 161 App. Div. 154; *McLaughlin* v. *McDevitt*, 63 N. Y. 213; *Matter of Staiger*, 243 N. Y. 468; *Matter of Putnam*, 257 N. Y. 140; *Hagan* v. *Sone*, 174 N. Y. 317; *Marx* v. *McGlynn*, 88 N. Y. 357; *Matter of Hack*, 74 Misc. Rep. 16.)

*Frederick W. Ritter* and *Henry Kock* for respondent. The contestants offered no competent testimony showing or tending to show that either undue influence or fraud was practiced upon the decedent in connection with his last will. Accordingly, the Appellate Division properly reversed, since it was error for the Surrogate to have submitted the case to the jury and the jury's determination finds no support in the testimony. (*Matter of Kindberg*, 207 N. Y. 220; *Matter of Dowdle*, 224 App. Div. 450; *Matter of Tymeson*, 114 Misc. Rep. 644; *Smith* v. *Keller*, 205 N. Y. 39; *Gick* v. *Stumpf*, 204 N. Y. 413; *Marx* v. *McGlynn*, 88 N. Y. 357; *Cudney* v. *Cudney*, 68 N. Y. 148; *Matter of Woods*, 189 App. Div. 324; *Matter of Dotterweich*, 210 App. Div. 131; *Matter of Dowdle*, 224 App. Div. 450; *Eckert* v. *Page*, 161 App. Div. 154.) The testimony clearly shows that the testator had a constant and abiding scheme for the distribution of his property which should not have been altered by passion and prejudice on the part of the jury. (*Ridden* v. *Thrall*, 125 N. Y. 572; *Matter of Nelson*, 141 N. Y. 152; *Matter of Dunn*, 184 App. Div. 386.)

O'BRIEN, J. The respondent, William C. Limberg, named as executor in a paper purporting to be the will of his father, Charles A. Limberg, propounded that instrument for probate. The proceeding was contested by Lucille and Gloria Limberg, infant daughters of Alfred Limberg, a deceased son of the testator. The issues of fraud and undue influence were submitted to a jury, which found for the contestants, and upon this verdict the decree of the surrogate denied probate. The Appellate Division, deciding that the proofs were insuf-

ficient to warrant submission of these issues to the jury, reversed the decree on the law and set aside the findings of the jury.

We think that the testimony of contestants' witnesses, credited as it has been, is sufficient as matter of law to support the findings of undue influence and fraud. The testator's wife died in April, 1934, and two weeks thereafter proponent and his wife Sophie, together with their daughters Helen and Jeanne, came to reside with him. The will before us bears the date May 14, 1936. Previously, in April, 1935, a will identical in terms with the will of May 14, 1936, was prepared by an attorney, who was first approached for that purpose by a brother-in-law of proponent's wife, Sophie, who admitted the existence of ill-feeling between herself and Hermine, the mother of the contestants. When the first will was drawn in April, 1935, testator was seventy years of age and was ill and complaining of his health. Sophie, the wife of proponent, kept a copy but never disclosed that fact to her husband or others. That will, as well as the will before us, provided:

" Third: I have in mind Hermine Limberg, the wife of my departed son Alfred Limberg, Lucille Limberg and Gloria Limberg, daughters of my departed son Alfred Limberg, but I do not make any provisions for them. Fourth: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, of which I may die seized or possessed or to which I may be entitled at the time of my decease, I hereby give, devise and bequeath to my beloved son William C. Limberg. In the event my son William C. Limberg should predecease me then in that event, I give, devise and bequeath my entire residuary estate as above mentioned to Sophie Limberg, wife of my son William C. Limberg, Helen Limberg and Jeanne Limberg, daughters of my son William C. Limberg, share and share alike."

Prior to the execution of the first will and intermediate the execution of these two wills many events occurred and declarations were made by the testator which are of vital importance in determining the question whether the facts as found by the jury are sufficient in law to constitute undue influence and fraud. While the oral and written declarations of the testator may not be received as evidence of the truth of facts stated therein, they are admissible to indicate the state of mind of the testator at the time they were made. (Richardson on the Law of Evidence [4th ed.], p. 230; 3 Wigmore on Evidence [2d ed.], pp. 726, 727; *Gick* v. *Stumpf*, 204 N. Y. 413, 417.) This evidence appears: In July, 1934, the testator told his niece, Margaret Lohmeier, that Sophie and William were constantly hounding him about making a will and that he had no peace. On Christmas Eve, 1934, he again told his niece: " I cannot stand it any more; I am going to put them out. She [Sophie] is a red devil." In December, 1935, he left home and boarded with a Mrs. Kayser at Lake Huntington until February, 1936. He told Mrs. Kayser that he intended to tear up his will of April, 1935; that William and Sophie would have to leave his house; that they did not give him any rest; that Sophie was a bad woman; that her husband William was just like a dish rag and did whatever Sophie said. He described Alfred's widow, Hermine, as a lovely woman and expressed an intention so take care of the two children, Lucille and Gloria. Also in December, 1935, he told an employee of Mrs. Kayser that for peace sake he had made a will but would destroy it, and " I got to change that will because them children of my oldest son, they are as much entitled to their share as my son is," and " I got to provide for them children, otherwise I won't have no rest in the grave." In January, 1936, the testator, then at Lake Huntington, wrote to the mother of the contestants: " I no longer feel well at home, for I can

no longer live together with those two, for I have a quarrel with them every day. When I come home I will sell the house, so I can part from them." During the same month he wrote to his niece: " Why should I be home, and aggravate myself every day, and where no one talks to me? * * * When I come home then I will tell those two something."

When the will of May 14, 1936, was executed testator was seventy-one years of age and suffering from cancer and cirrhosis of the liver. Next day he died. The day before the execution of this will testator stated that he intended to make a new will. The new will was copied by a neighbor at Sophie's request from the duplicate of the former will which Sophic had in her possession and which she supplied. It was for the jury to say whether the acts of Sophie were such as to overcome testator's independent volition so as to induce him to do what he otherwise would not have done. (*Matter of Anna,* 248 N. Y. 421, 427, 428.)

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division, payable out of the estate.

CRANE, Ch. J., LEHMAN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Ordered accordingly.