In the Matter of the Probate of the Will of BERTHA MAY, Deceased.

Surrogate's Court, New York County, July 26, 1944.

*Edward S. Blackstone* for Arthur R. Plantikow, petitioner.

*Alexander J. Lindsay* for Edward S. Blackstone, petitioner.

*Joseph A. Cox* for James F. Egan, Public Administrator of the County of New York, respondent.

*James E. Bennet* for German Reformed Protestant Dutch Church, respondent.

*Bernard J. Mallen,* attorney designated by the Alien Property Custodian to represent Paul Pester and others, persons within enemy-occupied territory.

*William J. A. Glancy,* special guardian for George Beeg and another, infants.

*M. Rudolph Preuss* for Ottilie Orphan Home, respondent.

*Sidney R. Siben* for Little Home for Friendless Animals, Inc., respondent.

Foley, S. This contested probate proceeding was tried by the Surrogate without a jury. Objections to probate were filed by the Alien Property Custodian, representing certain German nationals who are the next of kin of the testatrix, and by the Public Administrator.

Two instruments were propounded, a will dated November 7, 1942, and a codicil dated January 23, 1943. The testatrix died on November 4, 1943. She left as her next of kin, a brother and nephews and nieces. The issues raised by the objections involve the proper execution of the two instruments, the testamentary capacity of the testatrix and undue influence and fraud alleged to have been practiced upon her.

The contest presents exceptional circumstances in contrast with the usual cases where flimsy testimony as to the alleged invalidity of the will leads to a direction of verdict where the trial is had with a jury or to the admission to probate where the Surrogate is the trier of the facts.

At the time of the execution of the two instruments Mrs. May was about eighty-one years old. Her husband died on October 17, 1942. In his will be bequeathed to her his entire estate. The property which she then owned approximated in value the sum of $130,000. Under her will and codicil the principal beneficiary is Arthur R. Plantikow, who is charged with undue influence in the procurement of these instruments. Up to the time of her husband's death he had been a casual acquaintance of both husband and wife. He had been connected with a church of which the couple were members of the congregation some years before the testamentary transactions. He was the undertaker who conducted the funeral of the husband. The evidence conclusively establishes that immediately after the husband's death he contrived a scheme to obtain as much of the property of the testatrix in her lifetime as was possible and to obtain the bulk of her estate by will after her death. This design is emphasized by the steps taken by him and his attorney over a period of several months. Plantikow and his wife became almost daily visitors to the home of the testatrix. He supplied

the lawyer who drafted the will and codicil. The will was executed within approximately three weeks from the date of the husband's death. Within a brief period Plantikow obtained from Mrs. May several thousand dollars in bonds, which had been part of her husband's estate. Some of these bonds found their way into an account maintained by him with a stock broker. Others were used as collateral for loans obtained by him from a bank. He also caused the formation of a corporation of which he was the secretary and treasurer and to which he had Mrs. May transfer her real property and mortgages of the value of several thousand dollars. The alleged reason for these transfers was a saving of taxes for Mrs. May. The irregularities connected with the conveyances, however, and particularly the failure to issue any stock to Mrs. May in consideration of the conveyances, admit of the inference that the transactions were a definite part of a plan to secure control of her property or to obtain absolute title to it.

In the preparation of the will Plantikow was present at the time the instructions were given by the testatrix to his lawyer, the draftsman of the instrument. He was also present in the place where the will was executed, only slightly removed from the exact location where the paper was signed. The testatrix in the will made pecuniary bequests of approximately $29,500 to certain of her relations and to charitable beneficiaries. Plantikow was made the residuary legatee. His change of position from a casual acquaintance or an undertaker to a different role is demonstrated by the description of him in the will as " my dear friend and adviser." That phrase admittedly was the language of the draftsman and not that of the testatrix.

Plantikow's legacy under the will would have been about $90,000. The continued pressure and undue influence of Plantikow upon Mrs. May were shown by a further change in his favor in the codicil. His attorney also drew this instrument and the instructions were given by Mrs. May to him in the presence of Plantikow. Plantikow was also present at the time of its execution. The codicil reduced the total of the pecuniary legacies by $8,500 and thereby Plantikow's share of the residue was increased by that amount, making his interest in the estate approximately $100,000.

The circumstances are exceptional in another aspect. Two of the legatees who would benefit under either of the testamentary instruments have rejected the moneys bequeathed to them. One of these legatees is a church which Mrs. May attended. It was given $5,000 under the will. A nephew of the husband who was named as a beneficiary in the will has

likewise renounced any pecuniary benefit in the estate. The reason given by both of these legatees for making their renunciations and actively contesting the paper to their financial detriment is that they seek nothing from the estate because of the flagrant imposition practiced upon the testatrix by Plantikow.

The Surrogate finds that the propounded papers were executed in accordance with the formal requirements of the law and also finds that the testatrix was possessed of testamentary capacity. On the other hand, the contestants have conclusively established that both papers were procured by the undue influence of Plantikow. The maxim *qui se scripsit haeredem* applies to his motives and active participation in the procurement of the papers. His coercion of Mrs. May, with her enfeebled intellect weakened by old age, has been clearly demonstrated.

The facts here are distinguishable from those cases where a mentally and physically infirm testator personally selects the draftsman of the will and gives the instructions and performs the testamentary act without the presence of the person charged with undue influence. *Matter of Ruef* (180 App. Div. 203, affd. 223 N. Y. 582) is typical of the situation where a draftsman was freely chosen by the testator. Here the draftsman was the attorney for the chief actor.

When all the circumstances are grouped in their proper relation they carry to the conscience and judgment of the court the clear conviction that when Mrs. May made her signatures she was executing not her own will and codicil but papers which represented the wishes of Plantikow. Nor is it at all significant that some of her relations and certain charities were mentioned as legatees in the papers. It is not unusual in cases where undue influence is exerted that a plausible pretense of freedom of action on the part of the testator is lent to the paper by the inclusion of other legatees who might be the proper objects of bounty. Such a device is mere camouflage of an attempt to conceal the greater benefits passing to the person exercising undue influence. " It is no sufficient answer * * * that the testatrix was aware of the contents of the instrument, and assented to all its provisions. This was the precise purpose, which the undue influence was employed to accomplish." (*Tyler* v. *Gardiner,* 35 N. Y. 559, 595.)

The will and codicil are denied probate. (*Matter of Anna,* 248 N. Y. 421; *Matter of Wood,* 253 App. Div. 78; *Matter of Will of Smith,* 95 N. Y. 516; *Tyler* v. *Gardiner, supra; Delafield* v. *Parish,* 25 N. Y. 9; *Matter of Forsyth,* 169 Misc. 1042.)

Tax costs. Submit decree on notice accordingly.