In the Matter of the Probate of the Will of ALICE E. PHILLIPS, Deceased.

Surrogate's Court, Monroe County, January 11, 1949.

*Charles B. Bechtold* for Fred Phillips and another, proponents.

*Timothy J. Nighan, Edward J. Ryan* and *David R. Levin* for Lena Hatcliffe and others, contestants.

WITMER, S. At the close of the evidence after an extended trial before a jury in this probate proceeding the court dismissed the objections concerning due execution of the propounded will and competency of testatrix, and submitted to the jury the issue of undue influence. Contestants claimed that testatrix' brother, Fred Phillips, aided by his attorney, Charles B. O'Connell, procured the execution of the propounded will by the exercise of undue influence upon testatrix. The jury apparently believed contestants' witnesses and disbelieved proponents and their witnesses, for they promptly returned an affirmative verdict on the issue of undue influence. Proponents have moved to set aside the verdict as contrary to the evidence and to law, and have moved that the court admit the will to probate. They contend that at best the contestants have introduced only circumstantial evidence of undue influence and that since the court dismissed the objection to testatrix' competency, the verdict sustaining the objection of undue influence cannot stand because it is not supported by direct evidence thereof.

The law has gone a great way to protect testators in their testamentary dispositions. To make it impossible to establish the exercise of fraud or undue influence, except by direct evidence in cases of this sort, would in a measure destroy the protection the law intends to afford testators. It would serve to assist and protect persons in the perpetration of fraud or undue influence upon a testator under circumstances where direct evidence thereof is not available, and would thereby enable them to nullify an earlier proper will of such a testator. I doubt that the law is as rigid in this respect as proponents thus contend.

It appears that through an attorney of her choice summoned at her request, testatrix executed a prior will on August 13, 1945, less than six months before executing the propounded will, in which after a small legacy to a clergyman she gave half of her estate to her sole surviving sister, Lena Hatcliffe, and the other half in trust to pay the income to her brother Fred for life with the right to invade the principal if required for the reasonable support and maintenance of Fred in the sole discretion of the trustee, with the direction that the trustee's discretion be guided by Fred's willingness to obtain employment when physically able and the employment available. The remainder of such trust was given to Elizabeth McBride Weingarth of Syracuse, N. Y.

Under the propounded will all of testatrix' estate is given to Fred, except for a bequest to a clergyman, a bequest of $500 to the sister, Lena Hatcliffe, and a bequest in the sum of $25 to each of testatrix' nephews and nieces, naming them, twelve in all, including Elizabeth McBride Weingarth, the remainderman under the prior will. The maiden names of most of the nieces were used in the will, although the jury could find from the evidence that testatrix knew their correct married names and that her brother Fred did not know such names. There was also evidence from which the jury could find that the attorney who drafted the propounded will had at all other times acted as attorney for Fred, even in matters where his efforts were against the interests of the testatrix.

In view of the verdict contestants are entitled to the assumption on this motion that the jury found in their favor with respect to every disputed question of fact upon which evidence was presented. The evidence cannot be reviewed at length here, but it may be stated that there is evidence, in addition to the testimony of statements made by testatrix, from which the jury could have found that Fred was not industrious or careful with his money; that he drank to excess; that for some period of time prior to the execution of the propounded will he worked little, and was not able to support and did not support testatrix or himself; that he was dependent upon testatrix; that testatrix had earned her money and property (amounting to nearly $50,000) the hard way, was very penurious, and strongly resisted her brother Fred's requests for money for household necessities as well as for his own luxuries; that as a result there were many quarrels between testatrix and Fred and he frequently abused her physically as well as orally, and often threatened to get money out of her, saying that he would get it one way or another, and threatening to put her " in the bug house ", and causing her to fear him; that he forged her name to checks on her bank accounts and thereby obtained several hundreds of dollars of her money, and made efforts to get her to pay to him a stated sum weekly; that testatrix was crippled a few years before her death and got about with great difficulty, and was in failing health during the last years of her life; that shortly after the making of the will of August 13, 1945, testatrix' brother Fred learned about it and said he would look into it; that in January, 1946, he arranged to have his attorney call on testatrix and prepare the propounded will, and he arranged to have a bank employee, an acquaintance of his, and the doctor whom he had called to attend testatrix come to the house to witness the execution of the will; that Fred

was in the house within a few feet of testatrix and within hearing distance when the will was executed on January 18, 1946; that thereafter he kept testatrix isolated from friends and relatives as much as possible until her death; and that at the time of making funeral arrangements for testatrix he stated to a niece: '' I'm the boss; I know about that will that Mr. Ryan had drawn up * * * I've got things my way; I made her change that will or else I would put her in the bug house.''

The declarations of the testatrix were received on the issue of her state and strength of mind at the time they were made rather than as evidence of the truth of the facts stated therein, and they were competent for such purpose. (*Matter of Limberg,* 277 N. Y. 129; *Matter of McCarthy,* 269 App. Div. 145, 150, affd. 296 N. Y. 987.) The testimony of contestants' witnesses tended to prove the facts contained in many of the alleged declarations by testatrix.

Except for the admission by Fred Phillips that he made testatrix change her will, there is no direct evidence of undue influence on his part contributing to the execution of said will; and of course such statement does not eliminate the possibility that the propounded will was the free act and deed of testatrix. The verdict rests substantially upon circumstantial evidence.

Where the proof of undue influence is based upon circumstantial evidence such evidence need not make the inference of its exercise irresistible. (*Matter of Hill,* 241 App. Div. 911.) It is sufficient if there is proof of facts from which the inference of undue influence is to be drawn, and the inference sought is the only one which can fairly and reasonably be drawn from such facts. (*Matter of Henderson,* 253 App. Div. 140, 145.) The evidence of undue influence in this case presented a question of fact for the jury. (*Hagan* v. *Sone,* 174 N. Y. 317.)

I am not unmindful of the fact that in many cases involving a competent testator where the evidence of undue influence was wholly circumstantial, a Surrogate who failed to set aside a verdict upholding the objection of undue influence has been reversed. I believe, however, that upon the facts which it is presumed the jury found to exist in this case, including the admission by Fred Phillips that he made testatrix change her will under threat of putting her '' in the bug house '', the authorities not only justify me in sustaining the verdict and denying probate of the will but require me to do so. (*Matter of Zimmerman,* 254 App. Div. 630 [4th Dept.], affd. 279 N. Y. 659; *Matter of Limberg,* 277 N. Y. 129, *supra; Matter of Budlong,* 126 N. Y. 423; *Rollwagen* v. *Rollwagen,* 63 N. Y. 504, 518–521; *McLaughlin* v. *McDevitt,* 63

N. Y. 213; *Tyler* v. *Gardiner*, 35 N. Y. 559; *Matter of May*, 184 Misc. 336; cf. *Children's Aid Society* v. *Loveridge*, 70 N. Y. 387.)

The motion to set aside the verdict is, therefore, denied.

Submit decree denying motion and denying probate of the propounded will.