### In re LOEWENSTINE'S ESTATE.

(Common Pleas of New York City and County, General Term.  February 6, 1893.)

1. WILLS—CAPACITY TO MAKE.
   Where testator died from progressive paresis, which has its incipiency about three years prior to death, and his will leaving only a small legacy to his wife, on the ground that "she has proven herself not to be a loving wife," was made within two years of his death, at a time when he was in a state of gradual transition to absolute dementation, which preceded his death, and his marital relations were unusually happy until after his sickness, when he grew petulant, accusing his wife on trivial and imaginary grounds of neglect of himself, when her devotion was unceasing, the jury's finding that testator was not possessed of testamentary capacity will not be disturbed.

2. COMPETENCY OF WITNESS—PHYSICIAN.
   Code Civil Proc. § 834, provides that a physician "shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." *Held*, that a physician may testify to any knowledge obtained from personal acquaintance with a deceased patient before his professional relations commenced and after they ceased, but not as to knowledge obtained during the pendency of such professional relations. Fisher v. Fisher, 29 N. E. Rep. 951, 129 N. Y. 654, followed.

3. SAME—PRIVILEGED COMMUNICATIONS.
   Where a physician not in professional attendance on a patient secured knowledge of his condition pending a visit as the guest of the medical superintendent of the asylum in which the patient was confined, during which time he assisted the superintendent in the discharge of his professional duties, and his testimony related wholly to matters which were alike apparent to all persons sufficiently skilled in medical science, he was a competent witness, whether called to attend professionally or not; Laws 1892, c. 514,

amending Code Civil Proc. § 836, providing that a physician may disclose any information as to the mental condition of a patient which he acquired in attending professionally, except confidential communications, and such facts as tend to disgrace the memory of the patient.

Appeal from special term.

Petition for the probate of a will of Henry M. Loewenstine by Sanford D. Schwarzenberg, the executor named therein. Objections to the probate of the will were duly filed on behalf of Rosa M. Loewenstine, the widow of testator. By an order of the surrogate the proceedings were transferred to the court of common pleas for the city and county of New York. From an order by such court denying a motion for a new trial after a verdict by a jury, (Code Civil Proc. § 2547,) the executor, Schwarzenberg, appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Daniel G. Rollins, for appellant.

Horwitz & Hershfield, (Otto Horwitz, of counsel,) for respondent.

BISCHOFF, J. The paper propounded as the last will and testament of Henry M. Loewenstine was executed August 8, 1888, and contained the following provision:

"Second. I hereby give, devise, and bequeath unto my wife, Rosa, the sum of five hundred dollars, as ten thousand dollars of life insurance is in her name, and she has proven herself not to be a loving wife."

No other provision was made for the wife, and the remainder of the estate was left in trust for the use and benefit of an infant daughter, Gladdys, the decedent's only child. He died in April, 1890, while confined as a patient in an asylum for the insane, known as the "Long Island Home," at Amityville, in this state. From conclusive evidence it appears that his death was directly attributable to a mental disorder scientifically termed "dementia paralytica," but popularly known as "progressive paresis," which has its incipiency about three years before death, and indicates its presence by three consecutive stages, the periods of exaltation, depression, and absolute dementation; the first two stages being accompanied by delusions. It was conceded by the subscribing witnesses that at the very time of the execution of the alleged will the sanity of the decedent was a matter of serious concern, and it was abundantly shown that at or about this time he was in a state of intermittent exaltation and depression, which denoted his gradual transition to the state of absolute dementation immediately preceding his death. A number of witnesses acquainted with the decedent and his family testified to the effect that, previous to the incipiency of the disorder which culminated in his death, the domestic relations of the decedent were more than ordinarily felicitous, the mutual devotion of husband and wife marked and pronounced, while thereafter he became petulant and querulous, accusing his wife, upon trivial and sometimes wholly imaginary grounds, at intervals of constantly growing frequency, of neglect of himself and their infant daughter, though her devotion both as wife and mother had been unceasing. Upon this evidence the conclusion is irresistible that the decedent at the time of the execution of the paper propounded was

unduly influenced by delusions which injuriously affected his natural regard for his wife, and, assuming that there are no errors in the admission or exclusion of evidence, the jury's finding that the decedent was not possessed of testamentary capacity should not be disturbed.   To establish the existence of the mental disorder which led to his death, contestant offered the testimony of Drs. Walstein and Schweig, physicians who had at times been in actual professional attendance upon the decedent.   This proponent objected to as incompetent under the provisions of section 834 of the Code of Civil Procedure, "that a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."   The court thereupon ruled that the witnesses should be permitted to testify to any knowledge obtained from personal acquaintance with decedent before their respective professional relations with him commenced, and after they ceased, and excluded all testimony affecting knowledge obtained during the pendency of the relations; and hereto proponent excepted.   The ruling is, however, sanctioned by the court of appeals in Fisher v. Fisher, 129 N. Y. 654, 29 N. E. Rep. 951. One further exception was taken to the admission of Dr. Williams' testimony, who, though not actually in professional attendance upon the decedent, had secured knowledge of his condition pending a visit at the Amityville asylum as the guest of Dr. Carpenter, the medical superintendent, during which time he had assisted Dr. Carpenter in the discharge of his official and professional duties.   This exception is, however, equally unavailing.   The testimony related wholly to matters which were alike apparent to all persons sufficiently skilled in medical science, whether called to attend professionally or not so; and the statute which disqualifies an attending physician was designed to exclude only such information as only the physician in actual professional attendance upon the patient could acquire.   For instance, as here, dementia paralytica, or progressive paresis, has certain well-defined indications, which are exteriorly perceptible to almost every person.   From these indications one learned in the science of medicine concludes the presence of the disease, makes his diagnosis, as the physician terms it; but his professional attendance upon the afflicted is not necessary to enable him to do so. But it is useless to pursue the discussion, since, by recent amendment of section 836 of the Code of Civil Procedure, (see chapter 514, Laws 1892,)[1] the testimony is made competent beyond peradventure.   The order appealed from should be affirmed, with costs.   All concur.

[1] Laws 1892, c. 514, provides that "a physician or a surgeon may upon a trial or examination disclose any information as to the mental or physical condition of a patient, who is deceased, which he acquired in attending such patient professionally, except confidential communications, and such facts as would tend to disgrace the memory of the patient, when the provisions of section eight hundred and thirty-four have been expressly waived on such trial or examination by the personal representatives of the deceased patient, or if the validity of the last will and testament of such deceased is in question, by the executor or executors named in said will, or the surviving husband, widow, or an heir at law or any of the next of kin of such deceased, or any other party in interest."