plication for a reassessment, that all the capital stock is employed in manufacturing in the state of Massachusetts. But if we treat it as capital, on the theory that it must be so considered unless the company presents facts to the comptroller showing that it was derived from surplus, nevertheless it cannot fairly be said to be capital employed within this state. To be employed within this state, the property, whether money or goods, representing the capital, should be kept on hand in this state for use in the general business of the company, and it is its actual value only that is subject to taxation. The reasoning in the Seth Thomas Clock Case, above cited, and the purpose of the act under consideration, indicate that such is the rule. A sum of money sent into this state from the home office for the express purpose of paying a debt incurred herein, whether for services rendered or materials furnished, cannot reasonably be considered capital employed within this state. We may, I think, safely conclude that it was not the intent to levy a tax on all purchases made by a foreign corporation within this state. For the same reason, remittances sent to the company's agent to pay the company's creditors within this state, for debts then due and owing them, is not capital liable to taxation. Such remittance is, in effect, appropriated to the payment of certain debts, and is here for that purpose only. But for the existence of such indebtedness it would not have been in this state, and it is applied to the payment thereof as soon as it reasonably can be. The indebtedness always equals the remittance, and thus no capital is left for the use of the company. Remittances of that character, and for such purposes, we conclude, should not be treated as capital employed within this state. As to the fact that the relator had an interest, as lessee, in a building for which it paid rent, such an interest was not considered as capital taxable within this state in the case of People v. Campbell, 139 N. Y. 68, 72, 34 N. E. 753. Upon the record before us, it does not appear that the relator had any capital stock employed within this state, and therefore the determination of the comptroller should be reversed.

Determination of the comptroller reversed, with $50 costs and disbursements. All concur.

---

(8 App. Div. 74)

### MEYER v. STANDARD LIFE & ACCIDENT INS. CO.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

WITNESS—PHYSICIAN—EXPERT TESTIMONY.

Code Civ. Proc. § 834, providing that a physician shall not disclose any information acquired in attending a patient, does not forbid a physician from testifying as an expert in an action for injuries for which he treated plaintiff, though the knowledge acquired by him while attending plaintiff professionally may influence his answer as to the hypothetical questions.

Appeal from circuit court, Sullivan county.

Action by Mary A. Meyer against the Standard Life & Accident Insurance Company to recover on an accident policy issued by

defendant on the life of Frank D. Meyer, plaintiff's husband. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

T. F. Bush, for appellant.

John W. Lyon, for respondent.

PUTNAM, J. This action was brought by the plaintiff, beneficiary named in a certain policy of insurance issued by the defendant upon the life of Frank D. Meyer, deceased, her husband, whose death, it was alleged, was the direct result of an accidental injury sustained after the issuing of the policy. The plaintiff recovered a judgment, and the defendant appeals.

On the trial, the plaintiff—after proving that the insured, Frank D. Meyer, was injured in consequence of being accidentally struck with an iron wedge on his left side, in the region of the heart, on the morning of November 21, 1890, the circumstances attending such injury, and his subsequent illness, and the fact of his death a week afterwards—called four physicians as medical experts, to whom hypothetical questions were propounded, and who, in answer to such interrogatories, testified that in their opinion the death of the insured was the direct result of being struck by the wedge. Neither of the witnesses had attended the deceased professionally. It appeared that the plaintiff, during her husband's last illness, had called four doctors to examine and prescribe for him; one of them, Dr. Mayer, being the family physician. These doctors were called by the defendant as witnesses, and to three of them, Drs. Mayer, Appley, and Kemp, a hypothetical question was propounded by the defendant, in which each was directed to lay aside all knowledge or information he received as a physician at Meyer's house during his examination and treatment of him, and to give an opinion on the hypothetical state of facts assumed in the question. The question thus propounded to each of these medical experts was objected to by the plaintiff as incompetent, under the provisions of section 834 of the Code of Civil Procedure, and the objection sustained. We think such ruling of the trial court was erroneous. The hypothetical question put to each of said witnesses was in proper form, and did not go outside of the facts as to which some evidence had been given, and which could be assumed as the possible truth. People v. Smiler, 125 N. Y. 717, 26 N. E. 312; Guiterman v. Steamship Co., 83 N. Y. 358.

Although the three doctors, Mayer, Appley, and Kemp, had professionally attended the deceased in his last illness, the provisions of section 834 of the Code of Civil Procedure did not prevent them from giving an opinion, as medical experts, upon a supposed state of facts. Section 834 provides:

"A person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

An answer to the hypothetical questions asked of the witnesses would not have disclosed or have been based upon information obtained by them while in attendance upon the deceased. The knowledge they acquired by such attendance might to some extent have influenced their answer to the question, but that fact did not render such answer incompetent, but merely affected its weight. In People v. Schuyler, 43 Hun, 88, and Id., 106 N. Y. 298, 12 N. E. 783, a hypothetical question was put to the physician of a jail, who had attended the defendant professionally, and was held proper; and the reasoning of the court in that case sustains the views above expressed. In Fisher v. Fisher, 129 N. Y. 654, 29 N. E. 951, the following language occurs in the opinion:

"Upon the trial Dr. Curtis was called to give evidence as to the mental condition of Eliza Fisher at or about the time when she executed the deed. It appears that he had attended and prescribed for her professionally, and that he had also seen her at various times when he was not in attendance upon her for the purpose of treating her professionally. He was asked various questions as to her mental condition, excluding from his mind, in answering the questions, any knowledge or information which he had obtained as to her condition while acting as her medical attendant, and confining his answers to such knowledge and information as he had obtained of her by seeing her when she was not his patient. Counsel for the plaintiffs objected to the competency of the witness, under section 834 of the Code. The court overruled the objection, and the witness was permitted to answer, and he gave material evidence as to the mental condition of Eliza Fisher. In this there was clearly no error."

If a physician, who has professionally attended upon and prescribed for a person, and has also observed such patient while not thus in attendance, can give an opinion as to his condition, based upon facts he observed while not acting professionally, and excluding from his mind what he observed while in attendance, we can see no reason to doubt that he may also give an opinion upon a hypothetical state of facts stated in a question which excludes all knowledge of the condition of the patient which he derived while in professional attendance. The only objection that can be urged to a doctor, who has been in medical attendance upon a person, giving an opinion in answer to a hypothetical question as to the condition of his patient, is that the knowledge he derived while in attendance might affect his answer. But the same objection exists to the physician's giving an opinion founded upon observation of his patient while not in actual professional attendance. See, also, Edington v. Insurance Co., 77 N. Y. 564; Herrington v. Winn, 60 Hun, 238, 14 N. Y. Supp. 612; In re Loewenstine's Will, 2 Misc. Rep. 323, 21 N. Y. Supp. 931.

We do not understand that Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, to which our attention is called by the learned counsel for the respondent, conflicts with the doctrine established in the cases above cited.

The defendant asked the following question of Dr. Mayer:

"I will ask you, doctor, if a high fever, restlessness of the patient, complaining of pains over his entire body and accompanied with something of a cough, some spitting of blood, a delirious condition of the mind, in a case where the patient had complained a week or so before he was taken to his bed of not feeling well, and having a cough, are among the indications, sometimes, of typhoid fever?"

There was evidence that the deceased, in his last sickness, had all the symptoms as stated in the question. The question was objected to by the plaintiff and excluded. We are of the opinion that the question was a proper one. It did not call for information obtained by the physician when in attendance upon the deceased, but only for the opinion of the witness upon a hypothetical state of facts.

Without considering or determining the other questions raised, we conclude that the judgment should be reversed, and a new trial granted, costs to abide the event.

PARKER, P. J., and HERRICK and MERWIN, JJ., concur.

LANDON, J. I concur. The learned trial judge decided, in effect, that the attending physician could not answer the hypothetical question solely upon its hypothetical basis, but would to some extent base his answer upon his professionally acquired knowledge of the patient's actual condition. As this is a question of fact, it should be decided upon evidence. We cannot assume, as a matter of law, that the physician could not answer the question as a hypothetical one, wholly uninfluenced by his personal knowledge of the patient's condition. I suggest that the proper practice would be to examine the attending physician preliminarily as to his ability in this respect.