(25 Misc. Rep. 101.)

In re ROUNDS' WILL.

(Surrogate's Court, Cortland County.   October, 1898.)

**1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE.**

Testatrix had been for many years eccentric, of a nervous tempera-
ment, and difficult to get along with.   She often complained of her mental
condition, and feared insanity, and had twice attempted suicide.   She
had once been sent to an asylum, at her own request.   She complained
that there was an electric nerve through her body, which often overpow-
ered her.   For some time before death, she had been wavering and unde-
termined as to the disposition of her property.   For eight weeks before
death, she was confined to her bed with creeping palsy, and was entirely
helpless, and had frequent epileptic fits.   Five physicians testified that
she was of unsound mind.   The will was drawn five days before her
death, but she was too feeble to sign it until the next day, and she seemed
to have no clear idea of what it contained.   *Held*, that she did not have
mental capacity to make a will.

**2. SAME—DEVISE—VALIDITY.**

A devise of property was made in trust for the "Woman's Riverside
Home, a corporation to be hereafter incorporated."   At the time of the
execution of the will, there was a Woman's Riverside Home, owned by a
private person, and operated by her, assisted by a board of managers, and
it was intended to have the Home incorporated at some future time.   *Held*,
that the devise was void for uncertainty, as the Home might never become
incorporated.

**3. SAME.**

Under Laws 1848, c. 319, § 6, expressly left in force by Laws 1895, c. 559,
and which provides that no devise to a corporation "shall be valid in any
will which shall not have been made and executed at least two months
before the death of the testator," a devise to a corporation in a will exe-
cuted five days before testator's death is void.

Petition for the probate of the will of Samantha Rounds, deceased.
Petition denied.

S. S. Knox, for proponent.
Dougherty & Miller, for contestant.

EGGLESTON, S.   One of the objections urged against the probate
of the proposed will is the want of testamentary capacity upon the
part of the deceased to make a valid will.   The instrument offered
for probate bears date January 18, 1898, but, in fact, was signed
and executed by the testatrix on the following day.   Mrs. Rounds
died five days after the execution of the will, and was at the time
living with, and being cared for by, Mrs. Moore, who lived at Cort-
land, N. Y., at a place known as the "Woman's Riverside Home,"
at which place she had been living since some time in the previous
September.

Passing for the present the question of the due execution of the
will, and the question of the validity of the legacy mentioned therein,
was the testatrix, at the time of making the will, competent so to do,
and did she fully understand and comprehend her acts in the dispo-
sition of her property?   Was she in a condition mentally to exer-
cise the reason, care, and discretion of a person possessed of ordi-
nary intelligence, sufficient to enable her to make understandingly
a final disposition of her property?   The testatrix had for many

years been an eccentric person, designated by many of the witnesses upon the trial as a very peculiar woman. She was of extremely nervous temperament, with a mind filled with imaginations, so much so that she was a difficult person to reason with, to live with, or to have any business relations with. At times she was given to fits of weeping, would become violently angry, threaten injury to herself and members of her family, and would say that her neighbors were purposely disturbing and annoying her. In fact, her mind seemed for many years to have been in a weak and enfeebled condition, apparently in sympathy with a somewhat weakening physical condition. Oftentimes she complained to her immediate friends of her mental condition, and stated to them that she feared that she should become insane. Upon one or two occasions she had attempted suicide. Some years ago a brother had committed suicide, —a fact the deceased frequently talked about, and said she feared that she would end her life in the same way. One peculiar complaint which she made was—to use the language of witnesses—that there was an electric nerve which went through her body, and she could not overpower it; and she would complain of her head a good deal, and said this electric nerve pained her awfully when it went through her. She said the electric nerve would get hold of her, and push, and she could not control it; once in a while it would overpower her; and she said she would get hold of one end of the electric nerve, and push and push, and sometimes she would overpower it, and lots of times, she said, it would overpower her, the best she could do; and upon this subject of the trouble with the electric nerve she made frequent complaints. For some time previous to her death, the care of her property had been a burden to her, so much so that she besought others to take charge of it; and for a long time she had a wavering, unsettled opinion as to what final disposition she should make of her property, or for what purpose or to what person she should give the same, frequently changing her mind upon the subject. At one time she was taken, upon her own request, to a hospital for the treatment of insane, and afterwards requested her physician to again send her to an asylum for treatment, as she had so much trouble with her head, from which she must be relieved or she would be crazy. On the day of the execution of the will, Mrs. Rounds was very sick indeed, from which sickness she never recovered. She had been sick and confined to her bed at the Home for a period of seven weeks, gradually growing worse until the time of her death. The proposed will was prepared by an attorney who came to the Home with Dr. Moore on the 18th day of January, 1898, when the will was read to Mrs. Rounds; but she, at that time, being in so feeble a condition, could not execute it, and the will was left with Dr. Moore, who, on the 19th day of January, took it to the Home for the purpose of having the same executed, but, as Mrs. Rounds was asleep at the time, he left it with instructions to have it executed if she was able to do so when she awakened. Dr. Moore is in no way related to the persons in charge of the Home, and he has not given evidence as to the condition of testatrix at the times he was present at the Home, or as to her competency to make

a will. The persons present with Mrs. Rounds, at the time of the execution of the will, were Mrs. Watrous, Mrs. Moore, and Mrs. Bulman, all of whom were unfamiliar with the requirements necessary to the due execution and publication of such an instrument. Certainly, the execution of the will was without very much formality, and must have been accomplished under great difficulty. From the evidence of Mrs. Moore, who is one of the subscribing witnesses, and who is the person in charge of the Home, it will be seen that the testatrix did not have a very clear idea of what the will contained, and paid but very little attention to that matter, but left it entirely to those who were taking charge of it. The most she did say was that she wanted it all right. Mrs. Moore testifies that Mrs. Rounds said at the time of the reading of the will that she wanted it fixed right; supposed she had fixed the paper previously right, but that she had been told by friends it was not right; and, to quote her (Mrs. Moore's) language: "She said she had been told that I could not hold it, and she wanted me to have it for taking care of her. On prior occasions she had frequently told me that she had given it [meaning her property] to me; and she time and again told me that she had given everything to me, but she said, to make it all right, she had made papers so that no one else could get it [meaning the property]." Here we have the evidence of one of the subscribing witnesses that the testatrix desired the witness personally to have her property for the taking care of her, and certainly that is not the provision in the will. This testimony shows that the testatrix, at that time, did not understand the provisions of the will; nor is it shown how she could have understood its provisions. It is not shown that the testatrix ever gave to the attorney directions for the drawing of the will; nor does it show who gave to the attorney the direction for drawing the will, or how it came to be drawn. The will was prepared by the attorney, at whose instigation is not shown, taken by him to the Home for execution, and was not changed in any respect prior to its execution. Certainly, a will executed under such circumstances by a person who was weakened and borne down by sickness, and almost at the end of life, should not be admitted to probate without clear and convincing proof that it fully expresses the wishes and intention of the testatrix. The party offering the instrument must show satisfactorily that it speaks the language and contains the will of the testatrix. During the last eight weeks of the very severe sickness of the testatrix, she was confined to her bed, afflicted with creeping palsy. Her lower limbs had become nearly paralyzed, and she was entirely helpless. She had fits which are described by one witness as an epileptical form of fit. She had four of these fits on the Saturday and Sunday before her death, and, when under the spell, she would become insensible, froth at the mouth, and her muscles would become fixed. Her condition was such as to almost preclude the idea that at the time of making the will she could have understood fully the consequence of her act. Bear in mind, also, that her conduct and actions for many years had been such as to show that her mind was weakened and impaired, and for a long time she had hardly been competent to

make a just and proper disposition of her property. Five physicians —three of whom had known Mrs. Rounds and been her family doctor, the other two in answer to a hypothetical question asked—all stated that, in their opinion, she was of unsound mind. Dr. Dana, in speaking of her condition, says: "It was an insanity involving a degeneration of brain structure; insanity resulting from impairment of brain tissue or structure."

"In order to make a valid will, the testator must be capable of comprehending the condition of his property, and his relations to those who are objects of his bounty. He should be able at the time of the execution of the will to collect and retain in mind, without prompting, the elements of his business to be transacted, and hold them there until their relations to each other can be perceived, and a rational judgment in respect thereto be formed. At such time he should be competent to exercise understandingly the right to dispose of his property, and the way in which he desires to dispose of the same by devise or gift." Delafield v. Parish, 25 N. Y. 9; Van Guysling v. Van Kuren, 35 N. Y. 70. Guided by this principle of law, so long adhered to by the courts, a careful consideration of the evidence in this case can but lead to the one conclusion,—that the testatrix was incompetent, at the time of the execution of the proposed will, to make a valid will, and that at that time she did not fully understand and comprehend the provisions of the proposed will. In fact, it is extremely doubtful if the evidence shows a proper and sufficient execution and publication of the will. Borne down at the time by sickness and disease, she died a few days thereafter, without apparently rallying or regaining a condition of mind that would warrant the conclusion that she realized what had taken place at the time of the execution of the will.

Upon the evidence in this case, the proposed will should be denied probate. The decision reached, however, is not of so great importance, and is reached with less regret, for the reason that, were the proposed will admitted to probate, the disposition of the property could not be made as stated therein, and its provisions would be substantially inoperative by force of law. While it may not be necessary to consider the validity of the devise and bequest in the will at this time, yet it seems proper so to do, inasmuch as it very remotely bears upon the question of testamentary capacity of the testatrix, and has been very ably discussed by counsel in the case. Were the will admitted to probate, the validity of the devise and bequest would have to be passed upon in placing a construction upon the will. Is the intended gift valid? By the proposed will, the testatrix gives all of her estate, consisting of real and personal property,—to use the language in the will,—as follows:

"After all my lawful debts are paid and discharged, I give, devise, and bequeath all my real and personal estate, of every name and nature, and wherever the same may be situated, to Mrs. Mary M. Beach, of Cortland, Cortland county, N. Y., in trust, nevertheless, for the following purposes, viz.: I expressly order and direct said Mary M. Beach, whom I hereby name, constitute, and appoint trustee of the property herein bequeathed and devised in trust, to pay over and convey said property herein bequeathed and devised to her in trust to the 'Woman's Riverside Home,' a corporation to be

hereafter incorporated, and located at Cortland, Cortland county, N. Y., whatever may be its corporate name, to be held, used, and enjoyed and expended by said corporation so to be formed in the legitimate work of said corporation, as provided and permitted in its articles of incorporation and the laws of the state of New York in such cases made and provided; my express intention being to transfer and have transferred my real and personal property, of every name and nature, to said corporation above specified, as soon as said corporation may be incorporated under the laws of the state of New York."

Certainly, under this devise and bequest, the property is left in a very uncertain manner for an indefinite period. Upon the part of the contestants, it is urged that this devise and bequest is void, as the Woman's Riverside Home is not a natural person or corporation, has no legal entity, and is incapable of taking property by grant or devise. There is no such corporation duly and legally incorporated as the "Woman's Riverside Home of Cortland, N. Y.," though at the time of the execution of the will there was a home for aged women owned and operated by a person by the name of Mrs. Moore, assisted in some way by a board of lady managers. Evidently, it was the intention to have the Home, at some future time, incorporated. Mrs. Moore testified upon the subject as follows:

"Q. You say you own this home. You call it the 'Old Ladies' Riverside Home'? A. No; the 'Woman's Riverside Home'; it is for all ages. Q. And you are the owner and proprietor of it? A. Yes. Q. Any one else interested in it as owner? A. No, sir; of course, we expect it to come into the hands of the public as soon as— Q. You are still the owner of it, are you? A. Yes. Q. And no one else has any interest in it? A. No, sir; you mean by that that there would be no other claim on it? Q. No; I mean as owner. A. Yes. Q. You are the only owner? A. It is in my name, and nobody else's."

Briefly stated, the Woman's Riverside Home is an unincorporated institution, owned and operated by Mrs. Moore, assisted by a board of lady managers. It may be—it is hoped will be—at some future time legally incorporated. The fact of its incorporation is uncertain; it depends upon contingencies; possibly may never be incorporated; possibly it might fail of incorporation by reason of the fact that the consent of necessary parties could not be obtained for the same. Where shall this property vest in the meantime? Is this fund to be held in trust, and the heirs deprived of it, awaiting the expectation that such incorporation may some time be made? Suppose the Home is never incorporated. These are questions naturally suggested, and it is to guard against such doubtful happenings, such uncertain disposition of property by will, that the law has wisely upheld the doctrine that the validity of bequests should depend upon the certainty of their being carried out, and in no case is it permitted to suspend the absolute power of alienation beyond the statutory limit.

The case of Cruikshank v. Home for the Friendless, 113 N. Y. 337, 21 N. E. 64, is an authority in point in this case. In the case cited, the testator gave a portion of his property in trust to the establishment, support, and endowment of a charitable institution to be located in the city of New York, to be styled or named the "Delaplaine Institute for the Relief of the Friendless," with authority to his executors to apply for and obtain from the legislature of the

state, as early as practicable, an act of incorporation of the same. This bequest was held to be invalid, and, in a well-considered opinion upon the question, the court say:

"Can the gift to the unincorporated and nonexisting institution be sustained? It is quite apparent that the testator expected, and the will contemplated, a delay, before vesting in the intended beneficiary, long enough to enable it to come into being through the consent of the sovereign, and which by possibility might extend to a period of ten years. Such incorporation was dependent upon the will of the legislature. Its consent could reasonably be anticipated, but was not at all certain. * * * The delay contemplated was not incidental merely to a result certain and possible, * * * but contingent upon the uncertain action of the state, which might not take place at all, and leave a period of ten years during which the power of alienation would be suspended."

The language of the learned judge in the case of Cruikshank v. Home for the Friendless, cited above, forcibly applies to the case at bar. In that case it required the act of the legislature to incorporate (Laws 1848, c. 319); in this case it requires the written approval of a justice of the supreme court (Laws 1895, c. 559),—either of which could reasonably be anticipated for such a charitable or humane purpose, but was not absolutely certain. And to further quote the language of the court:

"In the interim the ownership of the property would be left 'swinging in abeyance,' doubtful of its direction and ultimate resting place; and this for a period longer or shorter, and not measured by lives in being."

The attempted disposition of the property under the will is invalid. A further objection is urged against the validity of the bequest in the proposed will. There was a period of only five days between the time of the execution of the will and the death of the testatrix. Section 6 of chapter 319 of the Laws of 1848 provides as follows:

"Any corporation formed under this act, shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatever. * * * And no such devise or bequest shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator."

While prior to the year 1895, under various statutes, it was permissible in some instances for certain benevolent, charitable, and religious corporations to take property by bequest, and be relieved from the inhibition of section 6, provided that the particular act under which such incorporation was had gave to such corporation power to take property by devise or bequest, by the act of the legislature as contained in chapter 559 of the Laws of 1895, known as the "Membership Corporations Law," the former statutes have been substantially repealed; and, were the Woman's Riverside Home seeking to be incorporated at this time, it would have to proceed under this act, or wait until a special act could be obtained for that purpose. It will be noticed that, by the repealing act of the membership corporations law of 1895, section 6 of the entire act of chapter 319, Laws 1848, is alone exempted and not repealed; and that section, being the law at this time, is to be given full force in connection with the law of 1895, providing for the incorporation of hospital corporations. That law declares that no devise or bequest un-

der the will to a corporation formed under this act shall be valid where the will is not made and executed at least two months before the death of the testator. Laws 1848, c. 319, § 6; Laws 1895, c. 559. This wise provision of the law has existed for a long time, and it is apparent that the legislature did not intend to encroach upon it in any way, but to retain it upon the statute books to be enforced to the letter. By force of the well-established rules of law, then, were the proposed will admitted to probate, its provisions in the disposition of property would be inoperative. However noble the purpose prompting the gift sought to be bestowed, however worthy the object to receive the benefit, both must yield to the stern command of the law as it has received the sanction and approval of the highest courts in this state, if the bequest is in violation of law.

The petition for the probate of the proposed will should be denied; the costs and disbursements to be settled in the decree. Decreed accordingly.