---

.(38 Misc. Rep. 25.)

## In re SODEN'S WILL.

### (Surrogate's Court, Dutchess County.   May, 1902.)

WILL—MENTAL INCAPACITY.

> Testatrix, in August, was sick with symptoms of insanity, accompanied by a delusion that she was subject to persecution. In October of the same year she was stricken with paralysis, accompanied with symptoms of paresis. In November she executed a will in conflict with her previously expressed intention to give her property to her crippled son. She never recovered, and long after she made her will she stated that she had made none. *Held*, that the will would not be admitted to probate.

In the matter of the application for the probate of the will of Elizabeth Soden.   Application denied.

Marvin R. Smith, for proponents.

Samuel K. Phillips, for contestant.

HOYSRADT, S.   Elizabeth Soden, a resident of Matteawan, died March 28, 1902, leaving an instrument which has been offered for probate as her will. Probate has been opposed upon the usual grounds, but the evidence has been directed mainly to the question of testamentary capacity. The testatrix was, at her death, about 70 years of age, and for many years previous had been a widow. By the accumulations from her earnings, derived from domestic work, aided by the savings of her son, William, she acquired and paid for a house and lot at Matteawan, which constitute her estate, and where she and her son, William, and his wife resided for upwards of 10 years before her decease. In the spring of 1900 Mrs. Soden began to exhibit a marked change of manner and disposition compared with her former life. She became irritable, depressed, and indifferent toward lifelong friends and neighbors. At intervals she apologized for her conduct, saying that her head was not right, and pained her. In August, 1900, she was suffering from a tumor on her face, which was removed by Dr. Tiel, who then discovered slight evidences of incipient insanity. In October, 1900, she was stricken with paralysis, and exhibited pronounced symptoms of paresis. This was accompanied by aphasia, shown in her inability to form sentences or to express ideas. She was confined to her bed for several weeks, and shortly after, in November, 1900, was able to leave the house to visit her niece in Putnam county. During a two-weeks' visit there she executed the instrument offered as her will, which is at conflict with' her freely expressed intentions. She had previously stated in positive terms that she would make no will, as she wished her son, who was

a cripple, to have her property, as he would need it. Only a few months before the execution of the will she stated to Mrs. Gregg that a will was foolishness, and she was glad she had none to make; that everything belonged to her son; and when he became unable to do any work he could mortgage the property. I view this merely on the question of capacity, and not as an obligation to make a testamentary disposition of her property. Several months after executing this will she repeated her former declaration about a will, and said she had made none. The progression of her disease is clearly shown. In December, 1900, the aphasia was more marked. In March there was evidence of another impending attack. In July, 1901, she suffered another attack of paralysis and paresis, during which she locked herself into a room, and was in a state of insane frenzy until subdued by chloroform. After temporary relief, this disease continued to progress until her death. There is evidence of a delusion of persecution dating from the summer months of 1900.

There seems but one conclusion to be formed as to the question of testamentary capacity. The expression of Mrs. Soden of her desire to have her property go to her son should be accepted as the natural design of a rational mind. The intervention of a brain disorder,—aphasia, a delusion,—followed by the execution of the instrument offered as her will, the subsequent statement that she made no will, and that the property belonged to her son, accompanied with the attack of violent insanity progressing until her death, combined to preclude, in my judgment, the presence of testamentary capacity where no explanation of the inconsistency is given. If the disposition is unnatural, and inconsistent with the obligation of the testator, it then becomes the duty of the proponents to give some explanation. In re Budlong, 126 N. Y. 423, 27 N. E. 945. In Re Lowenstine's Will, 2 Misc. Rep. 323, 21 N. Y. Supp. 931, it was held that where a testator died of paralytic dementia, having made his will while in the first stages of the disease, and giving his wife but a small sum, where their devotion prior to that time was marked, a finding of incompetency was sustained. Where a person tenaciously holds to a belief that a certain state of affairs exists, which does not, he is suffering from a delusion, and where a will is governed by such a delusion it is invalid. In re Lapham's Will, 19 Misc. Rep. 71, 44 N. Y. Supp. 90. In Re Rounds' Will, 25 Misc. Rep. 101, 54 N. Y. Supp. 710, it was held that as to a will executed when the testatrix was in a very feeble condition, being afflicted with creeping palsy, and a witness testifying to an expressed desire of the testatrix for a different disposition of the property than that made, probate was properly refused,—citing Delafield v. Parish, 25 N. Y. 9; Van Guysling v. Van Kuren, 35 N. Y. 70. The application for the probate is therefore denied.

Probate denied.