SHEILA LEASK, Indiv. and as Special Adm'r of the Estate of Barbara Andrews, Deceased, Plaintiff-Appellant, v. RANDALL L. HINRICHS et al., Defendants (Anthony F. Altimari, Defendant-Appellee).

Second District   No. 2—91—0671

Opinion filed July 7, 1992.

Lee Phillip Forman, of Lee Phillip Forman, Ltd., of Chicago, for appellant.

James T. Ferrini and Susan Condon, both of Clausen, Miller, Gorman, Caffrey & Witous, P.C., and Greenberger, Krauss & Jacobs, Ltd., both of

Chicago, Clausen, Miller, Gorman, Caffrey & Witous, O'Reilly, Cunningham, Norton & Mancini, and Wildman, Harrold, Allen & Dixon, all of Wheaton, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Lisle, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Sheila Leask, individually and as special administrator of the estate of Barbara Andrews, appeals the dismissal with prejudice of Dr. Anthony F. Altimari (Dr. Altimari) as a party defendant to her negligence suit. The trial court held that plaintiff's third amended complaint failed to comply with the requirements of section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—622). The court also denied plaintiff leave to amend the complaint. Plaintiff appeals pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) and argues that the trial court abused its discretion in dismissing Dr. Altimari with prejudice. Plaintiff also asks us to hold that section 2—622 violates the constitutional separation of legislative and judicial powers.

On January 17, 1989, after alighting from a bus driven by defendant Ivor Jackson, Barbara Andrews was struck and severely injured by a car driven by defendant Randall L. Hinrichs. Andrews was taken to Edward Hospital, where Dr. Altimari performed emergency surgery on her. Dr. Altimari was Andrews' attending physician at the hospital until her death from cardiac arrest on February 9, 1989.

Plaintiff's original complaint and her first and second amended complaints named defendants other than Dr. Altimari. On March 30, 1990, the court granted leave to take the discovery deposition of Dr. Altimari, who at that time was not a party. On June 20, 1990, plaintiff took Dr. Altimari's discovery deposition. In the deposition, Dr. Altimari stated that he was a physician and a board-certified general surgeon. He was the trauma surgeon on call at Edward Hospital on the evening that Barbara Andrews was injured. He first met Andrews in the emergency room that evening. Dr. Altimari assumed the role of Andrews' attending physician for as long as she was in the hospital.

Dr. Altimari testified in detail to the surgery and subsequent tests performed on Andrews. He opined that her death, though ultimately related to her injuries of January 17, 1989, was the immediate result of a specific embolic event of February 9, 1990, that brought on acute cardiac arrest or pulmonary embolism. Andrews was being transported on a medical cart when she suddenly complained of shortness of breath, went into apparent cardiac arrest, and died.

Dr. Altimari acknowledged that tests performed on Andrews through February 4, 1989, revealed that her red blood cell count, hemoglobin count, and hematocrit levels all decreased to abnormally low levels during this period. There was also evidence of hematuria (blood in the urine). Urinalysis further suggested the possibility of a urinary tract infection. Dr. Altimari admitted that Andrews told him several times that she was experiencing difficulty urinating. No urine or blood tests were performed on Andrews after February 4, 1989.

Dr. Altimari agreed that the autopsy report showed a laceration of Andrews' bladder, a fact not revealed by any hospital examinations. Dr. Altimari conceded that the bladder laceration could have resulted from Andrews' initial injuries and may have caused the hematuria. However, he agreed with the autopsy report that the exact mechanism of Andrews' death could not be demonstrated.

On December 13, 1990, plaintiff filed her third amended complaint, adding Edward Hospital, Dr. Altimari, and Naperville Surgical Associates (for whom Dr. Altimari worked) as defendants. Counts X through XV sought recovery against all three of the newly added defendants under the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 et seq.), the Survival Act (Ill. Rev. Stat. 1989, ch. 110½, par. 27—6), and the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015). It appears that Naperville Surgical Associates, for whom Dr. Altimari worked, has never been served with process. Count XIII alleged that Dr. Altimari and Naperville Surgical Associates were guilty of negligence that proximately caused Andrews' death. Specifically, plaintiff alleged, in part, that each was negligent for not performing a complete and proper examination of Andrews; for not diagnosing her bladder rupture; for not assigning Andrews to a competent board-certified urologist or nephrologist; and for failing to perform follow-up urine and blood tests that could have alerted the defendants to the condition that ultimately caused Andrews' death from cardiac arrest.

Plaintiff's attorney appended an affidavit to the third amended complaint (see Ill. Rev. Stat. 1989, ch. 110, par. 2—622(a)(1)) stating that he had consulted and reviewed the facts of the case with a physician licensed to practice medicine in all its branches; that plaintiff's attorney believed the consulting physician was knowledgeable in the issues relevant to the case; that the reviewing physician had determined that there was a reasonable and meritorious cause for filing this action; and that plaintiff's attorney thereby concluded that there was a reasonable and meritorious cause for the action.

In his report of December 12, 1990, the consulting physician, Dr. Neil Kramer, stated that because he was a board-certified cardiologist, his report would be directed to the "cardiac aspects of [Andrews'] care." Dr. Kramer's report concluded that, in his opinion, "no definate [*sic*] cardiac cause exists for this patient's demise. However, in the presence of a patient who has sustained pelvic injury with ongoing hematuria and changes in kidney function blood tests, failure to obtain consultation for further urological investigation and/or follow-up of abnormal laboratory data would be considered substandard care and may have contributed to this patient's demise."

On February 14, 1991, Edward Hospital moved pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) to dismiss the complaint with prejudice for failure to comply with section 2—622. Edward Hospital argued that Dr. Kramer's report was fatally deficient because it did not distinguish between the actions of the defendant physicians and the defendant hospital. The record does not show that plaintiff responded to this specific motion.

On March 21, 1991, Dr. Altimari also moved to dismiss the complaint with prejudice for failure to follow section 2—622. Dr. Altimari argued that the area of medicine at issue in this case was the surgical and post-surgical care of a trauma patient and that Dr. Kramer, a cardiologist, was not an appropriate specialist to file the required report. Dr. Altimari further stated that plaintiff had been aware of Dr. Altimari's extensive deposition testimony since June 20, 1990, giving her ample time to find an appropriate specialist to file the necessary report.

On April 15, 1991, plaintiff filed her response to Dr. Altimari's motion to dismiss. The response requested that plaintiff be allowed to file an "amendment" that would "cure the defect complained of" in Dr. Altimari's motion to dismiss.

The proposed amendment was a report dated April 4, 1991, from Dr. Mordehai Sela, a surgeon and urologist. The report discussed the facts of the case in detail and concluded that Dr. Altimari had failed to correctly interpret signs of urine leakage from Andrews' urethra or bladder. Dr. Sela opined that seepage of urine into the patient's pelvic area, combined with other mistakes in treatment, resulted in Andrews' death. Dr. Sela specifically concluded that the outcome of the treatment could have been different had there been an adequate initial evaluation of the patient and a consultation with a urological surgeon. Therefore, according to Dr. Sela, there was reason to blame

the negligence of Dr. Altimari and others for Andrews' death and reasonable cause for filing the action against Dr. Altimari.

On April 18, 1991, Dr. Altimari responded in writing to the proposed amendment. Dr. Altimari argued that by moving to substitute Dr. Sela's report plaintiff was conceding that Dr. Kramer's report was inadequate. Thus, Dr. Altimari argued, plaintiff had violated section 2—622 because she had failed to file a proper physician's report at the time her complaint added Dr. Altimari as a defendant.

On April 24, 1991, the trial court dismissed Edward Hospital as a defendant. The dismissal was with prejudice, although plaintiff had orally moved for a voluntary dismissal. Plaintiff at no point challenged this order.

On May 17, 1991, plaintiff filed a written reply to Dr. Altimari's response to her proposed amendment. Plaintiff argued that the report by Dr. Kramer was adequate because it stated that the failure to obtain further urological consultations was a breach of the applicable standard of care. Plaintiff also denied that the motion to add Dr. Sela's report was an admission that Dr. Kramer's report was inadequate.

On May 17, 1991, the court heard argument on Dr. Altimari's motion. Addressing plaintiff's attorney, the trial judge said, "you seem to agree that [Dr. Kramer's] report is deficient. And you wish to substitute another doctor?" Plaintiff's attorney replied, "That's correct, your Honor." Counsel for plaintiff and for Dr. Altimari then argued whether Dr. Sela's report satisfied section 2—622.

The trial judge concluded that Dr. Kramer's report was inadequate because it did not distinguish between the conduct of the doctor and the hospital and did not "contain the words, that there was a good and meritorious cause of action." The judge found that Dr. Sela, as a urologist and a medical doctor, was qualified to make the report. The judge found no fault with Dr. Sela's report.

The court nonetheless refused the proposed amendment and dismissed the case against Dr. Altimari with prejudice. The judge referred to the delay between Dr. Altimari's deposition and the filing of the third amended complaint, noting that in all this time plaintiff had failed to submit a proper report with the complaint. Plaintiff had not asked for extra time to file the required medical report. The court entered a written order dismissing the case and specifically finding that there was no just reason to delay enforcement or appeal of the order. (See 134 Ill. 2d R. 304(a).) Plaintiff filed this timely appeal.

Plaintiff argues that the trial court erred in dismissing the complaint for failure to comply with section 2—622(a)(1). The first conten-

tion in this regard is that the trial court erred in holding that Dr. Kramer's report did not satisfy section 2—622(a)(1).

We conclude that plaintiff has waived this argument. Her original response to Dr. Altimari's motion to dismiss did not defend Dr. Kramer's report but submitted an amendment to "cure the defect complained of" in Dr. Altimari's motion. Plaintiff later filed an argument defending Dr. Kramer's report. However, at the hearing on the motion, her attorney stated unequivocally that plaintiff wished to substitute Dr. Sela's report for Dr. Kramer's report. Plaintiff's attorney did not thereafter attempt to defend Dr. Kramer's report. Rather, he argued that Dr. Sela's report was adequate and that the amendment should be allowed.

■■ ■ A reviewing court will recognize the principle of waiver whenever a party intentionally relinquishes a known right or acts in such a manner as to warrant an inference of such relinquishment. (*In re Estate of Trahey* (1975), 25 Ill. App. 3d 727, 731.) Issues not raised in the trial court are deemed waived and may not be raised on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01.) Having acknowledged that she wanted to amend her complaint by substituting a new medical report for the original one, plaintiff waived the right to rely on the original medical report. She therefore waived the argument that her third amended complaint, as originally filed, met the requirements of section 2—622(a)(1). We believe, however, that the question of the sufficiency of Dr. Kramer's report is relevant to our consideration of whether the trial court abused its discretion in dismissing plaintiff's complaint and denying her leave to amend the complaint with Dr. Sela's report.

■ Plaintiff argues next that the trial court lacked the authority to dismiss the complaint with prejudice solely because the medical report filed with the complaint was insufficient. Plaintiff points to *Huff v. Hadden* (1987), 160 Ill. App. 3d 530. There the Appellate Court, Fourth District, held that, although section 2—622(a)(1) requires the filing of both a consultation affidavit and a medical report with the complaint, section 2—622(g) provides for dismissal *only* for the failure to file the "certificate," *i.e.*, the consultation affidavit. This court also has held that the term "certificate" as used in section 2—622 refers specifically to the consultation affidavit. *Premo v. Falcone* (1990), 197 Ill. App. 3d 625, 629; *Wasielewski v. Gilligan* (1989), 189 Ill. App. 3d 945, 948.

Plaintiff did not raise this argument at the trial level, and we may therefore consider it waived. (*Barkei v. Delnor Hospital* (1990), 207 Ill. App. 3d 255, 263.) Further, even if we were to disregard the

waiver rule, we find it unnecessary to resolve the issue here, as it would not affect the result. Assuming *arguendo* that the trial court had the discretion to dismiss Dr. Altimari and to deny plaintiff leave to amend based solely on an insufficient medical report, we hold that under the circumstances of this case the court abused that discretion.

The trial court's discretion must be viewed in relation to the basic purpose of section 2—622. This purpose is to deter frivolous medical malpractice suits at an early stage. (*DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 65; *McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 193.) Ensuring that the plaintiff has a meritorious claim is the touchstone of section 2—622. (*Wasielewski v. Gilligan* (1989), 189 Ill. App. 3d 945, 949; *Relaford v. Kyaw* (1988), 173 Ill. App. 3d 1034, 1037.) The technical pleading requirements imposed by section 2—622 should not be utilized to deprive a plaintiff of a trial on the merits of a medical malpractice claim. (*Simpson v. Illinois Health Care Services, Inc.* (1992), 225 Ill. App. 3d 685, 689; *Requena v. Franciscan Sisters Health Care Corp.* (1991), 212 Ill. App. 3d 328, 333.) Amendments to medical malpractice pleadings should be liberally allowed so that the case may be decided on its merits. *Cato v. Attar* (1991), 210 Ill. App. 3d 996, 999; *Moss v. Gibbons* (1989), 180 Ill. App. 3d 632, 638.

Under the facts of this case, involuntary dismissal with prejudice of the malpractice claim against Dr. Altimari does not appear to have served the purpose of section 2—622. Nothing in the record demonstrates that plaintiff is bringing a frivolous claim, and it appears that plaintiff acted in good faith to secure the required medical opinion to support the claim. Moreover, any undue prejudice to Dr. Altimari from allowing plaintiff to amend her complaint is unclear at best.

Plaintiff timely filed both the required consulting affidavit and the required medical report. Although plaintiff apparently conceded that Dr. Kramer's report was inadequate, any inadequacies in that report are not so glaring as to suggest bad faith or abuse of the legal process on plaintiff's part.

The trial judge specifically found that Dr. Kramer's report was defective in that (1) it did not "distinguish between the doctor and the hospital" and (2) it did not contain the words "that there was a good and meritorious cause of action." However, the medical report need not contain the specific words "good and meritorious cause of action"; it is sufficient that the consulting health care professional has given reasons for his conclusion that the cause has merit. *Hagood v. O'Conner* (1988), 165 Ill. App. 3d 367, 373.

■ Dr. Kramer's report did not explicitly distinguish between the involvement of Dr. Altimari and the hospital. A single medical report in a suit against multiple defendants (the situation at the time Dr. Kramer made his report) should be broad enough to cover all the defendants and should adequately discuss deficiencies in the medical care given by the defendants. (*Premo v. Falcone* (1990), 197 Ill. App. 3d 625, 632.) The report should discuss the involvement of each defendant. (*Moss*, 180 Ill. App. 3d at 638.) Although the report did not specifically delineate the negligence of Dr. Altimari (as opposed to that of the hospital), this shortcoming appears unlikely to have caused significant confusion or prejudice.

Dr. Kramer's statement that the failure to obtain consultation for further urological investigation or follow-up of abnormal laboratory data was substandard care was an implicit conclusion that Dr. Altimari, as the attending physician for Barbara Andrews, was negligent in determining what tests should be performed. Because prejudicial confusion was unlikely under these circumstances (see *Alford v. Phipps* (1988), 169 Ill. App. 3d 845, 855), vagueness in Dr. Kramer's report is a relatively minor shortcoming which does not necessarily suggest a lack of diligence on plaintiff's part or prejudice to Dr. Altimari therefrom.

Dr. Altimari did not challenge Dr. Kramer's report until March 21, 1991. Within a month thereafter, plaintiff moved to amend the complaint by adding a detailed and apparently satisfactory medical report. This report was dated April 4, 1991, about two weeks after Dr. Altimari's motion to dismiss.

■ Considering all of these circumstances, we are compelled to hold that the trial court abused its discretion in dismissing Dr. Altimari with prejudice rather than allowing plaintiff to amend the complaint. Plaintiff provided a satisfactory medical report less than a month after the original report (which was not grossly deficient) was challenged. Although some inconvenience to Dr. Altimari may have resulted from plaintiff's delay, such inconvenience or delay is insufficient in itself to deny a medical malpractice plaintiff leave to amend. (*Moss*, 180 Ill. App. 3d at 639, citing *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 591.) The trial court never implied that plaintiff's claim against Dr. Altimari was frivolous and found no fault with the report of Dr. Sela which stated that the suit had merit.

In *Cato v. Attar* (1991), 210 Ill. App. 3d 996, this court reversed the denial of the plaintiff's motion to amend her medical malpractice claim and the dismissal of that claim with prejudice. The plaintiff did not attach a consultation affidavit *or* a written medical report with

her complaint. She forewent the requirements of section 2—622 in reliance on the holding of the Appellate Court, First District, in *De-Luna v. St. Elizabeth's Hospital* (1989), 184 Ill. App. 3d 802, *rev'd* (1992), 147 Ill. 2d 57, that section 2—622 was unconstitutional. We noted that before the first district's decision this court had already upheld the constitutionality of the statute in *Bloom v. Guth* (1987), 164 Ill. App. 3d 475, 478-79. In holding in *Cato* that the trial court should have granted the plaintiff's prompt motion to amend her complaint, we reasoned that, despite the plaintiff's poor legal research, there was no indication of bad faith or an intent to frustrate justice by the plaintiff and no showing that defendant would have been prejudiced had the amendment been allowed or the complaint been dismissed without prejudice.

Such considerations apply with at least equal force here, where plaintiff timely filed both the consultation affidavit and the report required by statute and moved promptly to amend the complaint upon the motion to dismiss. Plaintiff's conduct here seems neither less reasonable, nor more indicative of a frivolous lawsuit, than that of the plaintiff in *Cato*. (See also *Simpson v. Illinois Health Care Services, Inc.* (1992), 225 Ill. App. 3d 685 (dismissal with prejudice was abuse of discretion where plaintiff filed required affidavit and report late but was diligent in attempting to submit the report on time).) Accordingly, we hold that the trial court abused its discretion in dismissing plaintiff's complaint with prejudice and denying plaintiff leave to amend with the medical report of Dr. Sela.

Cases on which Dr. Altimari relies all involve conduct far more indicative of the plaintiffs' irresponsibility or the lack of a meritorious suit than plaintiff's conduct here. In *Premo v. Falcone* (1990), 197 Ill. App. 3d 625, the plaintiffs filed no consultation affidavit at all until they moved to reconsider the trial court's grant of involuntary dismissal. The plaintiffs were also late in filing their written medical reports. The original medical report was grossly insufficient, and the report submitted with the motion for reconsideration was only somewhat better. In *Batten v. Retz* (1989), 182 Ill. App. 3d 425, both the consultation affidavit and the medical report were filed late, and the documents were grossly deficient in several respects. Moreover, the plaintiff's motion to amend did not include a proposed complaint with certificates and reports in compliance with section 2—622. Thus, the plaintiff had done nothing to demonstrate that the complaint was not frivolous. In *Moss v. Gibbons* (1989), 180 Ill. App. 3d 632, the plaintiff filed both the certificate and the medical report late and without leave of court. The medical report was seriously deficient.

The consultation affidavit predated the report and thus violated the requirement that it be based on a review of the report. Finally, the plaintiff did not submit any proposed amendments when seeking leave to amend the complaint.

■ Plaintiff also asks this court to declare that section 2—622 is an unconstitutional breach of the separation of powers. However, we must follow the supreme court's recent holding that section 2—622 is valid. See *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS, P.J., and McLAREN, J., concur.