(No. 73519.—

*In re* ESTATE OF H. EARL HOOVER (Robert C. Hoover *et al.*, Appellees, v. Miriam U. Hoover *et al.*, Appellants).

*Opinion filed June 17, 1993.*

404

406

HARRISON, J., took no part.

James J. Carroll, of Sidley & Austin, and Michael W. Coffield and John D. English, of Coffield, Ungaretti & Harris, all of Chicago, for appellants.

David L. Poindexter and Robert A. Holstein, of Holstein, Mack & Klein, and Jerold S. Solovy, Laura A. Kaster, Norman M. Hirsch and Patricia A. Bronte, of Jenner & Block, all of Chicago, for appellees Robert C. Hoover et al.

Hinshaw & Culbertson, of Chicago, for appellees Robert A. Holstein and Holstein, Mack & Dupree.

Michael T. Hannafan & Associates, Ltd., of Chicago, for appellees Nancy Hoover, Elizabeth Hoover and Courtney Hoover.

Seymour Simon, Stanley J. Adelman, Michael R. Goldman and Frederic A. Cohen, of Rudnick & Wolfe, of Chicago, for appellee Richard S. Schiffrin.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiffs, Robert C. Hoover and five of his seven children, brought this action in the circuit court of Cook County against the defendants, the executors and several beneficiaries of H. Earl Hoover's estate, to contest the validity of Mr. Hoover's will and several codicils. In their first amended complaint, plaintiffs alleged that Mr. Hoover's will and the last five codicils to the will were invalid because the testator lacked testamentary capacity and, alternatively, because these instruments were the products of undue influence. Defendants moved for sum-

mary judgment on both the testamentary capacity count and the undue influence count. Plaintiffs only contested the motion for summary judgment on the undue influence count. The trial court granted summary judgment in favor of the defendants as to both counts of the complaint. Thereafter, plaintiffs filed a motion to vacate the trial court's grant of summary judgment in favor of the defendants. Plaintiffs also moved for leave to file a second amended complaint *instanter*, which included a count alleging fraud in the inducement. The trial court denied plaintiffs' motions.

Defendants then filed a motion for sanctions against the plaintiffs and their attorneys pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611 (now preempted by Supreme Court Rule 137 (134 Ill. 2d R. 137))). The trial court granted defendants' motion for sanctions, assessing $129,000 in sanctions against Robert C. Hoover, individually, and $805,000 in sanctions, jointly and severally, against Robert C. Hoover, Robert A. Holstein, and the law firm of Holstein, Mack & Dupree. The trial court refused to impose sanctions against any other individual attorneys of the law firm, finding that they had acted on the authority of Robert A. Holstein and on the law firm's behalf.

Plaintiffs appealed from the trial court's grant of summary judgment on the undue influence count and its denial of their motion to file an amended complaint *instanter*. Plaintiffs and their attorneys also challenged the trial court's imposition of sanctions. In a cross-appeal, defendants challenged the trial court's refusal to impose sanctions on any other individual attorneys.

The appellate court reversed the trial court's grant of defendants' motion for summary judgment on the undue influence count and remanded the cause for further proceedings, finding that the record contained numerous is-

sues of material fact. (226 Ill. App. 3d 422, 430.) In light of this reversal, the appellate court also reversed the order imposing sanctions and remanded the issue of sanctions for further consideration following the trial of the case in chief. (226 Ill. App. 3d at 432.) In addition, the appellate court reversed the trial court's order denying plaintiffs leave to amend their complaint *instanter*. (226 Ill. App. 3d at 432.) We granted defendants' petition for leave to appeal (134 Ill. 2d R. 315).

On appeal, the issues before this court are whether: (1) the appellate court properly reversed the trial court's grant of summary judgment entered in favor of the defendants; (2) the appellate court properly allowed plaintiffs to amend their complaint on remand to include a count of fraud in the inducement; (3) the appellate court properly reversed the trial court's order imposing sanctions against Robert C. Hoover, Robert A. Holstein and the law firm of Holstein, Mack & Dupree; and (4) the trial court properly admitted an affidavit from plaintiffs' expert witness.

As stated, the plaintiffs instituted this action to contest the validity of H. Earl Hoover's will and the last five codicils to the will. Mr. Hoover died testate and his will and eight codicils were admitted to probate in November 1985. He executed his last will and testament in June 1974. The testator's son, Robert, and Robert's children were beneficiaries under the will and the first through third codicils. Under the fourth codicil, Mr. Hoover partially disinherited Robert and five of Robert's seven children. Under the fifth codicil, Mr. Hoover completed the disinheritance of Robert and Robert's five children. The sixth through eighth codicils to Mr. Hoover's will upheld this disinheritance.

As stated, plaintiffs filed a will contest in the circuit court of Cook County based on the theories of lack of testamentary capacity and undue influence. The undue

influence count was based on allegations that Mr. Hoover's free will and agency had been overcome by a calculated series of lies, misrepresentations, and omissions concerning Robert's character. According to the allegations in plaintiffs' complaint, these lies and misrepresentations about Robert came from the testator's wife, Miriam, Robert's brother, Jack, Robert's daughters, Elizabeth and Courtney, and, primarily, Robert's ex-wife, Nancy. Specifically, the complaint alleged that the defendants, by way of a scheme of lies, omissions, and misrepresentations, convinced Mr. Hoover that Robert had mishandled his divorce from Nancy, that his actions had destroyed his family and his relationship with his daughters, Courtney and Elizabeth, that his divorce settlement with Nancy was unfair and had left her, Courtney, and Elizabeth virtually destitute, and that he had refused to provide funding for Courtney's and Elizabeth's educations. The complaint further alleged that these misrepresentations struck at the core of Mr. Hoover's ethical code of conduct and were designed to and did destroy the once warm and loving relationship that had existed between Mr. Hoover and his son and resulted in Robert's disinheritance.

## I

Turning to the merits of defendants' appeal, we initially note that, although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment is, therefore, proper only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) In considering a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and has

a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. (*Outboard Marine Corp. v. Liberty Mutual Insurance* (1992), 154 Ill. 2d 90, 131-32.) If the court finds that the record contains any material issues of genuine fact, the motion for summary judgment must be denied. A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. (See *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358.) As in all cases involving summary judgment, we review the evidence in the record *de novo. Outboard Marine*, 154 Ill. 2d at 102.

In the case at bar, the appellate court found that the record before it contained numerous issues of material fact with regard to the plaintiffs' undue influence count. As this court has previously stated, undue influence which will invalidate a will is " 'any improper *** urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely.' [Citation.]" (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460.) To constitute undue influence, the influence " 'must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another.' [Citation.]" *Franciscan Sisters*, 95 Ill. 2d at 460; see also *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 105.

What constitutes undue influence cannot be defined by fixed words and will depend upon the circumstances of each case. (*Smith v. Henline* (1898), 174 Ill. 184, 201.) The exercise of undue influence may be inferred in cases where the power of another has been so exercised upon the mind of the testator as to have induced him to make a devise or confer a benefit contrary to his deliberate judgment and reason. (*Smith*, 174 Ill. at 201.) Proof of

undue influence may be wholly inferential and circumstantial. (*Cheney v. Goldy* (1907), 225 Ill. 394, 400.) The influence may be that of a beneficiary or that of a third person which will be imputed to the beneficiary. (*Cheney v. Goldy* (1907), 225 Ill. 394, 400; *Smith*, 174 Ill. at 201; see also *Schmidt v. Schwear* (1981), 98 Ill. App. 3d 336, 342, 345; *Swenson*, 92 Ill. App. 2d at 102.) False or misleading representations concerning the character of another may be so connected with the execution of the will that the allegation that such misrepresentations were made to the testator may present triable fact questions on the issue of undue influence. *Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 236-37; see *Lyman v. Kaul* (1916), 275 Ill. 11, 22.

As the appellate court properly determined, the record reveals that numerous issues of material fact exist in this case. To support their claim that defendants misrepresented Robert's character and actions to H. Earl Hoover, plaintiffs have presented, as evidence, letters written by Nancy to Mr. Hoover. In these letters, Nancy claims that Robert had abandoned his daughters, that the divorce settlement was unfair and left Nancy and the girls virtually destitute, and that he had destroyed their family. She also claimed that Robert had refused to provide funds for the girls' educations.

Plaintiffs presented evidence by way of Nancy's divorce attorney that the settlement was, in the attorney's opinion, a very good one under the circumstances. Plaintiffs also presented evidence that Robert had set aside funds for the girls' educations outside of the divorce settlement agreement, and had factored any further educational funds, which may have been needed, into the maintenance formula. Defendants, in turn, presented evidence which either controverts plaintiffs' allegations or supports defendants' contention that Nancy spoke the truth, thus defeating plaintiffs' claim that defendants in-

fluenced Mr. Hoover by a series of lies and misrepresentations. Clearly, the evidence presented by the parties raised numerous issues of material fact which must be resolved by a trier of fact. Plaintiffs also presented evidence that Miriam, the testator's wife, supported Nancy and advocated Nancy's position to Mr. Hoover. Whether Miriam influenced Mr. Hoover to disinherit Robert and the degree of influence, if any, which is attributable to her are also questions of fact to be resolved by the jury. In addition, a question of material fact exists with regard to one of Mr. Hoover's diary entries which was written on June 23, 1981, just prior to the execution of the fourth codicil which began Robert's disinheritance. The diary entry provides:

> "At 1:20 Bob Foote came to 4:10 [*sic*] & with [Miriam] revised our wills. He called Tom Swaney & told of the changes. Gave him some snaps for Barbara."

Plaintiffs allege that the diary entry indicates that Miriam alone met with Bob Foote and revised her will as well as H. Earl Hoover's codicil. Defendants argue that, on the other hand, the entry indicates that both Mr. Hoover and Miriam met with Bob Foote and that each changed their respective wills. Clearly, this diary entry presents a material fact question which must be resolved by a jury.

Defendants argue, however, that summary judgment was proper because plaintiffs failed to provide any evidence that Nancy's influence, if any, was directly connected with the execution of the codicils which disinherited Robert, or that any influence on her part was directed towards procuring a will in her favor.

We find that defendants' argument is misguided. In this case, plaintiffs' complaint alleges a subtle, invidious kind of undue influence. Specifically, the plaintiffs allege that the testator's will was overbourne by a series of misrepresentations about Robert's character. In essence,

the complaint alleges that these misrepresentations were internalized by Mr. Hoover and prompted him to act in accordance with the influencer's intent rather than his own original intent. Our courts have recognized that the substitution of one's will over that of the testator's original intent may be accomplished by misrepresentations and/or concealment of facts. (*Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 235-37; see *Lyman v. Kaul* (1916), 275 Ill. 11, 22; see also *In re Sprenger's Estate* (1953), 337 Mich. 514, 522, 60 N.W.2d 436, 440; *Cude v. Culberson* (1947), 30 Tenn. App. 628, 661-62, 209 S.W.2d 506, 521.) Under these circumstances, the testator may act as if directed and guided by his own agency but that agency may have been overpowered by "secret influences." (See *Sterling*, 15 Ill. App. 2d at 237.) In a "secret influences" case, plaintiffs may introduce circumstantial evidence to demonstrate that the influence was connected with and operative at the time of execution of the will and that the influence was directed towards procuring the will in favor of the beneficiary.

We conclude that the plaintiffs in this case have provided circumstantial evidence from which undue influence may be inferred. It is undisputed that H. Earl Hoover was greatly disappointed with Robert's handling of his divorce, was disturbed by Robert's relationship with his daughters, and believed that Robert did not provide funds for the girls' educations. These disputes within Robert's family greatly upset Mr. Hoover. In addition, there is evidence in Mr. Hoover's diary that he felt that the whole ordeal was traumatic. Moreover, there is also evidence that Robert had once held a very close relationship with his father and that his disinheritance coincided with Mr. Hoover's receipt of letters and visits from Nancy and the girls. There is also evidence that Mr. Hoover and Miriam discussed Nancy's letters and that Miriam sympathized with Nancy. Significantly, in

the fourth codicil, Mr. Hoover partially disinherited his son and added a direct bequest to Nancy, an ex-wife of one of his sons, and to Courtney and Elizabeth, which was a unique occurrence. See *Armstrong v. McGee* (Ala. 1991), 579 So. 2d 1310, 1313; *In re Probate of the Will of Budlong* (1891), 126 N.Y. 423, 431-32, 27 N.E. 945, 946.

The appellate court properly concluded that the above-delineated items provide some circumstantial evidence of undue influence which may have operated during the execution of the codicils and may have been directed towards their procurement. As the appellate court stated:

> "From this evidence, and given H. Earl Hoover's age and deteriorating health, an inference could be drawn that the pressure from family members overcame H. Earl Hoover's will, and influenced him to procure a will disinheriting Robert and his five children, and providing bequests for Nancy and her two children." (226 Ill. App. 3d at 427-28.)

Where fair-minded persons could draw different inferences from undisputed facts, then a triable issue of fact exists. (*In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 167.) In light of the above, we find that it must be left to the jury to resolve the numerous issues of material fact presented by the evidence and to determine, ultimately, whether H. Earl Hoover was unduly influenced by the defendants to disinherit Robert and five of his children. Therefore, we agree with the appellate court's reversal of summary judgment.

## II

Defendants next contend that the appellate court improperly reversed the trial court's denial of plaintiffs' motion to amend their complaint following the entry of summary judgment. Defendants argue that the trial court's

denial of the motion to amend was a matter of discretion and that, therefore, the appellate court's reversal in the absence of an abuse of discretion was erroneous.

After the trial court entered summary judgment in favor of the defendants, the plaintiffs moved to amend their complaint pursuant to section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g)) to allege a count of fraud in the inducement.

The trial court's determination of whether to allow or deny amendment is a matter of discretion and will not be reversed absent an abuse of discretion. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273.) Section 2—1005(g) provides:

"Before or *after the entry of a summary judgment*, the court *shall* permit pleadings to be amended upon *just and reasonable terms*." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g).

The "just and reasonable terms" language used in section 2—1005(g) mirrors the language used in section 2—616 (Ill. Rev. Stat. 1987, ch. 110, par. 2—616). Under these sections, the right to amend is very broad. This court has interpreted this "just and reasonable terms" language as " 'requiring the trial court to permit amendment if it will further the ends of justice.' [Citation.]" *Loyola Academy*, 146 Ill. 2d at 272-73.

In *Loyola Academy*, this court adopted four factors to be used in determining whether the trial court's denial of a party's motion to amend constituted an abuse of discretion: (1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the movant had previous opportunities to amend. (*Loyola Academy*, 146 Ill. 2d at 274-76.) The overriding concerns, however, are justness and reasonableness. See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g).

In the instant case, plaintiffs contend that their proposed amendment contains additional factual information which plaintiffs obtained during discovery and, thus, would have conformed their pleadings to the evidence. Allowing plaintiffs leave to amend would not have surprised or prejudiced the defendants since plaintiffs submitted the additional factual information in opposition to defendants' motion for summary judgment. In addition, plaintiffs' motion to amend occurred while this cause was still in the pleading stage. The motion was timely for this reason as well. Moreover, the plaintiffs filed their motion to amend only 18 days after entry of summary judgment. Finally, plaintiffs have only amended their complaint on two prior occasions in response to defendants' claims of insufficient factual allegations and, as stated, the proposed amendment contained factual information that plaintiffs uncovered during discovery and could not have included in their complaint at an earlier time.

Most importantly, however, plaintiffs' proposed amendment includes a count based on fraud in the inducement. We concur with the appellate court when it recognized:

> "In order to support a fraud in the inducement theory, Nancy's statements must be shown to have caused H. Earl Hoover to sign each of the contested codicils disinheriting Robert. This is the same showing which must be made to support an undue influence theory." (226 Ill. App. 3d at 432.)

Because there remain genuine issues of material fact as to plaintiffs' undue influence claim, and because plaintiffs will rely on the same allegations in their undue influence count as in their fraud in the inducement theory, we find it to be just and reasonable to allow plaintiffs leave to amend their complaint in the manner proposed. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g); *Loyola Academy*, 146 Ill. 2d 263.) Therefore, we find that the trial court abused its dis-

cretion in denying plaintiffs' motion and we agree with the appellate court's reversal on this issue.

## III

The defendants further contend that the appellate court improperly reversed the trial court's order imposing sanctions. Defendants argue that the trial court's sanctions order was a matter of discretion and may not be reversed absent an abuse of discretion.

As stated earlier, following the trial court's entry of summary judgment in favor of the defendants, defendants filed a motion for sanctions pursuant to section 2—611 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611 (now preempted by Supreme Court Rule 137 (134 Ill. 2d R. 137)).) The trial court, after hearing argument on the motion, allowed defendants' motion and imposed sanctions against Robert C. Hoover, individually, and against Robert C. Hoover, Robert's attorney, Robert A. Holstein, and the law firm of Holstein, Mack, & Dupree, jointly and severally. The trial court refused to impose sanctions against any junior attorneys employed by the law firm, finding that they had acted on behalf of the law firm and pursuant to the authority of Robert Holstein, one of the firm's named partners.

On appeal, the plaintiffs challenged the imposition of sanctions while the defendants challenged the trial court's refusal to impose sanctions against other attorneys who had signed pleadings in this case. Based on its reversal of summary judgment, the appellate court reversed the trial court's sanctions order. The appellate court further directed that, if the trial court again awards sanctions of a significant amount, it "must provide a specific explanation for its sanction award and an itemized account of what fees and expenses it is allowing or disallowing." 226 Ill. App. 3d at 432-33.

The legislative policy underlying section 2—611 is to penalize litigants who plead false or frivolous matters or who initiate suits without any legal basis. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77.) Its provisions may be invoked only in cases that fall strictly within its terms, and the party seeking sanctions has the burden of proving that its opponents' allegations were untrue and made without reasonable cause. *Wernick*, 127 Ill. 2d at 77, 79.

As defendants correctly point out, the trial court's allowance of a motion for sanctions under section 2—611 is a matter within the trial court's discretion and will not be disturbed absent an abuse of discretion. (*Wernick*, 127 Ill. 2d at 78.) As this court has stated:

> " '[W]here the exercise of discretion has been frustrated by the application of an erroneous rule of law, review is required to permit the exercise in a manner " 'consistent with the law.' " ' *People v. Brockman* (1991), 143 Ill. 2d 351, 363-64." *Loyola Academy*, 146 Ill. 2d at 274.

In the instant case, the record demonstrates that the trial court's sanctions award was based in large part upon a mistake of law. The trial transcript reveals that the trial court erroneously determined that, since H. Earl Hoover was mentally competent, he could not have been unduly influenced and that, therefore, plaintiffs' allegations of undue influence were either false or baseless. In Illinois, lack of testamentary capacity is not an element of undue influence. A testator may have had the requisite testamentary capacity to execute his will while, at the same time, operating under undue influence. (See, *e.g., Peters v. Catt* (1958), 15 Ill. 2d 255 (affirmed directed verdict on testamentary incapacity count but reversed directed verdict on undue influence count).) Therefore, we find that the trial court's application of an erroneous rule of law in granting defendants' motion for sanctions constitutes an abuse of discretion. (*Loyola Academy*, 146 Ill. 2d at 274.) Accord-

ingly, we agree with the appellate court's reversal of the trial court's sanctions order.

Both parties have asked us to resolve further issues pertaining to sanctions. To decide the further issues raised by the parties at this point would be to decide issues in a hypothetical case. Accordingly, we decline to address these arguments at this time because they are not yet ripe for our consideration. (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 498.) Additionally, we vacate that portion of the appellate court's judgment which directs the trial court to itemize significant sanctions awards in the future. This direction by the appellate court was both premature and *dictum*.

## IV

Finally, defendants contend that the trial court erred in denying their motion to strike plaintiffs' expert affidavit in which the affiant, Dr. Finkel, opined that Mr. Hoover had been unduly influenced by the defendants to disinherit his son, Robert. Most of defendants' arguments in support of their position are without merit.

After hearing the arguments on both sides, the trial court, in its discretion, denied defendants' motion to strike. In doing so, the trial court determined that Dr. Finkel was qualified to render an opinion on the issue of undue influence and competent to testify thereto at trial. A trial court's evidentiary ruling is a matter of discretion and will not be reversed absent a clear abuse of discretion. (*Mache v. Mache* (1991), 218 Ill. App. 3d 1069, 1077.) Under the circumstances of this case, we cannot find that the trial court abused its discretion in denying defendants' motion to strike.

Defendants, however, advance a policy argument against the admission of expert opinions in will contest cases alleging undue influence. Because this issue may arise on remand, we will address it in the interest of judi-

cial economy. Defendants contend that expert opinion evidence based on "psychiatric autopsies" is unscientific, unreliable, and consists of pure speculation because the expert had no opportunity to examine the testator. We disagree. Illinois law does not require an expert witness to physically examine or personally know the patient in order to render an expert opinion in the case. Defendants ask us to carve out an exception to this general rule for will contest cases based on undue influence. Defendants have offered no persuasive reason why we should carve out such an exception and we decline to do so. We note that courts of other jurisdictions have admitted into evidence expert psychiatric testimony based on retrospective "psychiatric autopsies" and we find no reason why Illinois courts should not do likewise. (See *Campbell v. Young Motor Co.* (1984), 211 Mont. 68, 77-78, 684 P.2d 1101, 1106; *Jackson v. State* (Fla. App. 1989), 553 So. 2d 719, 720.) Therefore, we find that the trial court may properly consider such opinion evidence.

## V

For the foregoing reasons, we affirm the appellate court's reversal of summary judgment and the sanctions order. We vacate that portion of the appellate court's mandate directing itemization of sanctions. We reverse the judgment of the circuit court and remand this cause to the circuit court for further proceedings consistent with this opinion.

> *Appellate court affirmed in part*
> *and vacated in part;*
> *circuit court reversed;*
> *cause remanded.*

JUSTICE HARRISON took no part in the consideration or decision of this case.