BRADLEY JACOBS, Plaintiff-Appellant, v. RUSH NORTH SHORE MEDICAL CENTER *et al.*, Defendants-Appellees (Irving R. Savin *et al.*, Defendants).

First District (1st Division) No. 1—94—2112

Opinion filed November 4, 1996.—Rehearing denied December 11, 1996.

BUCKLEY, J., dissenting.

Philip F. Maher, Stephen E. McLean, and Harry C. Lee, all of Chicago, for appellant.

Chad M. Castro, Diane I. Jennings, and Leslie J. Rosen, all of Lord, Bissell & Brook, of Chicago, for appellee Rush North Shore Medical Center.

Thomas H. Fegan, Robert L. Nora, and Kelly N. Warnick, all of Johnson & Bell, Ltd., of Chicago, for appellee Northwestern Memorial Hospital.

JUSTICE WOLFSON delivered the opinion of the court:
Plaintiff Bradley Jacobs (Jacobs) appeals from an order of the

circuit court that dismissed, with prejudice, defendants Rush North Shore Medical Center (Rush) and Northwestern Memorial Hospital (Northwestern) in Jacobs' medical malpractice action. Jacobs asks us to find that the trial court abused its discretion when it held that the section 2—622 attorney affidavit and reviewing health professional's report he submitted were insufficient as to these defendants. 735 ILCS 5/2—622 (West 1994). In the alternative, he asks us to find that the trial court abused its discretion when it refused to allow him to file a second amended complaint. For reasons that follow, we affirm the order of dismissal.

■ Section 2—622 of the Illinois Code of Civil Procedure requires a plaintiff "in any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital or other healing art malpractice" to attach to the complaint (1) an affidavit from the plaintiff or his attorney that a qualified health professional has determined in a written report that there is a meritorious cause of action, and (2) the health professional's written report indicating the basis for his determination. 735 ILCS 5/2—622 (West 1994); *McCastle v. Sheinkop*, 121 Ill. 2d 188, 190, 520 N.E.2d 293 (1988); *Tucker v. St. James Hospital*, 279 Ill. App. 3d 696, 665 N.E.2d 392 (1996).

According to the statute, the health professional must be "knowledgeable in the relevant issues involved in the particular action *** and qualified by experience or demonstrated competence in the subject of the case." 735 ILCS 5/2—622(a)(1) (West 1994). The report itself must clearly identify "the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." 735 ILCS 5/2—622(a)(1) (West 1994). Failure to comply with these requirements is grounds for dismissal under section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—622(g) (West 1994). When the trial court dismisses a party because plaintiff has failed to satisfy the requirements of section 2—622, that ruling will not be disturbed unless it is clear that the trial court abused its discretion. *Winters v. Podzamsky*, 252 Ill. App. 3d 821, 621 N.E.2d 72 (1993).

In the present case, Jacobs filed his initial complaint on January 24, 1992, without a section 2—622 health professional's report. Plaintiff sought, and was granted, a 90-day extension for the filing of the report. None was filed. Instead, on June 24, 1992, Jacobs sought and obtained a voluntary dismissal.

On June 19, 1993, Jacobs refiled the complaint, again without a section 2—622 report attached, as required. He was granted a 90-day extension, but did not file the report until October 19, 1993. When

the sufficiency of the report was challenged by the defendants, Jacobs was given until January 3, 1994, to file an amended report. The amended report was not ready and Jacobs was given a "final extension" until January 26, 1994, to file the amended report.

The amended report was filed on January 25, 1994. But the defendants again moved to dismiss because the report still failed to comply with the requirements of section 2—622. On January 27, 1994, Jacobs was granted leave to file a second amended report and a brief in response to the motions to dismiss, up to and including February 4, 1994.

On February 4, 1994, Jacobs filed with the court a first amended complaint, to which he attached his affidavit and second amended report. At the hearing on February 18, 1994, the court entered an order allowing Jacobs to file the amended complaint and second amended report. The court, however, found that the report was insufficient as to Rush and Northwestern and dismissed them from the case.

The affidavit does not identify the reviewing physician's qualifications. It merely tracks the language of the statute, stating that the affiant has consulted "a health professional who the affiant reasonably believes is knowledgeable in the relevant issues *** and this health care professional has determined *** a meritorious cause for filing" the action.

The report, which is 25 pages in length, does not indicate the qualifications of the reviewing physician, nor does the physician claim to be "licensed in all its branches."[1] The report does, however, discuss, at length, the reviewer's analysis of the hospital records for the plaintiff's stay at Rush and Northwestern.

According to the report, Jacobs was admitted to the emergency room at Rush on February 13, 1990, complaining of pain in his right side, constipation, nausea, vomiting, and a fever. Diagnostic tests were performed and Jacobs was admitted to the hospital due to "liver abnormalities." More tests were done and several physicians were

---

[1]The first amended report contains the statement, "I am a physician, licensed in all its branches." The second amended report does not contain this statement. For this reason, the second amended report, standing alone, does not comply with section 2—622(a)(1). The record does not contain a copy of the reviewing physician's initial report.

Section 2—622 (a)(1) does provide that information identifying the health professional may be deleted and the amended reports, here, do not identify the physician making the report. However, the record also lacks a *curriculum vitae* or other document to suggest what credentials the reviewing physician possesses.

brought in for consultation. Although at least one doctor hypothesized, on February 14 or 15, that Jacobs was suffering from "hepatic vein thrombosis, *i.e.* Budd-Chiari syndrome," a venography (identified by the reviewing physician as the "gold standard" diagnostic study for this disease) was not attempted until day five of Jacobs' hospital stay at Rush.

On February 17, 1990, the venography could not be accomplished, which should have confirmed the diagnosis of Budd-Chiari syndrome. The doctors, however, failed to make this diagnosis and, accordingly, did not perform a shunt bypass procedure, which the reviewing physician believed should have been performed. Instead, Jacobs was transferred, on February 19, 1990, to Northwestern for "more definitive diagnosis and treatment."

At Northwestern, Jacobs was immediately diagnosed as having Budd-Chiari syndrome. However, no aggressive interventions were employed. The reviewing physician asserted that the physicians at Northwestern repeated many of the diagnostic tests already performed at Rush, thereby delaying surgical treatment. It was not until February 25, 1990, that a liver transplant specialist was brought in from the University of Chicago Hospital for a consult. On February 27, 1990, Jacobs was transferred to University of Chicago for a liver transplant.

A liver transplant was performed on February 28, 1990. Jacobs was hospitalized at the University of Chicago through June 7, 1990, during which time he underwent numerous diagnostic and surgical procedures. Jacobs ultimately had to have both legs amputated above the knee.

It is important to note that, in Jacobs' first amended complaint, Rush and Northwestern were not alleged to be liable on a theory of agency or *respondeat superior* but, instead, were charged with their own acts of negligence. The complaint acknowledged the independent contractor status of the doctors who treated Jacobs at these facilities. The complaint assigned negligence to Rush and Northwestern by 13 different means, including a failure to properly refer and treat Jacobs, failure to hire competent doctors; failure to train, manage, and supervise the doctors; and failure to establish and enforce proper protocols.

■ Generally speaking, when a hospital is the defendant in a medical malpractice action, a physician licensed in all its branches is qualified to be the reviewing health professional. 735 ILCS 5/2—622(a)(1) (West 1994); *Moss v. Gibbons*, 180 Ill. App. 3d 632, 637, 536 N.E.2d 125 (1989). However, there is support for the notion that, when allegations of a hospital's failure to supervise are advanced, the

reviewing professional may be required to demonstrate competence in health care administration. *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828, 594 N.E.2d 381 (1992). In any event, the report, to be sufficient, must discuss the involvement of each defendant in the treatment of the plaintiff and must be more than a "generalized conclusion" of malpractice. *Moss v. Gibbons*, 180 Ill. App. 3d at 638.

■ In the present case, the reviewing physician's report details how several physicians involved in Jacobs' treatment during his hospitalizations at Rush and Northwestern deviated from the standard of care. It does not, however, set forth with any particularity *how* the hospitals deviated from the standard of care applicable to them. The reviewing physician merely concludes that the hospitals failed to properly screen the physicians they granted privileges to, failed to properly train and supervise the doctors assigned to treat Jacobs, and failed to transfer Jacobs in a timely manner. These assertions, unsupported by any facts or reasoning, are insufficient to meet the requirements of section 2—622. See *Tucker v. St. James Hospital*, 279 Ill. App. 3d 696, 665 N.E.2d 392 (1996) (health professional's report must fail under section 2—622 if it does not provide reasoning to support conclusions).

Under these circumstances, we cannot say that the trial court abused its discretion when it found that the section 2—622 certificate was insufficient as to these defendants. Because our review is limited to an assessment of the trial court's exercise of discretion, we affirm the order of the circuit court dismissing Rush and Northwestern.

■ Subsequent to dismissal, Jacobs sought leave to file a second amended complaint in which he alleged that the doctors who treated him at Rush and Northwestern were the agents or apparent agents of Rush and Northwestern and that the hospitals, by and through their agents, were negligent. This is because the court in *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828, 594 N.E.2d 381 (1992), found that a health professional's report which was sufficient as to the defendant doctors would also be sufficient as to the hospital if the complaint alleged agency or *respondeat superior*. The trial court, however, denied Jacobs leave to file the second amended complaint, saying that the attempt to plead agency "comes too late." Jacobs asks us to find that the trial court abused its discretion. We do not.

A trial court has the discretion to vacate an order of dismissal, as well as the discretion, pursuant to section 2—616 of the Code of Civil Procedure, to allow an amendment any time before judgment on just and reasonable terms. Although we might have ruled differently if we were deciding the matter in the first instance, we cannot say that the trial court abused its discretion by refusing to allow amendment.

As the facts recited earlier make clear, plaintiff had ample time and opportunity to bring a proper case before the court. In 1993, when the matter was refiled after being voluntarily dismissed in 1992, Jacobs chose to proceed on the theory that the hospitals acted with independent negligence. Plaintiff was unable to obtain a section 2—622 report to support this theory after being given numerous opportunities to do so. We cannot say that the trial court abused its discretion by refusing to allow Jacobs to amend his complaint to allege the new theory of agency, especially when Jacobs previously admitted that the physicians acted as independent contractors.

We affirm the order dismissing Rush and Northwestern with prejudice.

Affirmed.

BRADEN, J., concurs.

JUSTICE BUCKLEY, dissenting:

I respectfully dissent from the majority decision, as I believe that plaintiff's section 2—622 reviewing health care professional's report satisfied the statutory requirements, and second, that if it did not, the trial court should have allowed plaintiff's second-amended complaint.

A complaint may be dismissed where the section 2—622 written report does not comply with the statutory standards, but leave to amend should then be granted. *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 1042, 658 N.E.2d 1239, 1244 (1995). Section 2—622 simply requires that plaintiff's complaint contain (1) an affidavit stating that a qualified health professional has determined that plaintiff's cause of action is meritorious, and (2) a written report indicating the basis for this determination. 735 ILCS 5/2—622 (West 1994). As long as minimal compliance is made, the case should move on to summary judgment or trial. *Steinberg*, 276 Ill. App. 3d at 1049, 658 N.E.2d at 1248. A single report is adequate if it is sufficiently broad to cover all defendants. *Relaford v. Kyaw*, 173 Ill. App. 3d 1034, 1040, 527 N.E.2d 1328, 1332 (1988). Most importantly, the purpose of section 2—622 is to deter frivolous suits rather than to deprive a plaintiff of a trial on the merits of his claim. See *Steinberg*, 276 Ill. App. 3d at 1042, 658 N.E.2d at 1244.

Plaintiff's section 2—622 report clearly met the statutory requirements where it set forth six distinct reasons in support of the health professional's determination that plaintiff's claim was reasonable and meritorious as against specific physicians as well as Rush and

Northwestern hospitals. As to the doctors, the report stated the failure to timely and accurately diagnose plaintiff's illness, failure to assess the possibility of a surgical procedure in a timely manner, and failure to take the appropriate measures to ascertain the reasons for plaintiff's symptoms.

Regarding the fault of the hospitals, the report stated a significant delay in transferring plaintiff to a care center where a corrective procedure and/or liver transplant could occur, failure to screen the physicians to whom the hospitals granted privileges in order to establish the doctors' competency to deal with such situations, and failure to properly and adequately train and supervise physicians, residents and interns. Given these clear assertions of liability on the part of both individual physicians and the hospitals at which they work, I find that plaintiff's reviewing health care professional's report met the requirements of section 2—622 as to defendants Rush and Northwestern.

The second basis for my dissent is that I believe the trial court abused its discretion in denying plaintiff's motion to amend his complaint to add agency allegations.

A trial court has discretion in determining whether an amendment should be allowed, but the court's determination should be reversed where it has abused that discretion. *In re Estate of Hoover*, 155 Ill. 2d 402, 416, 615 N.E.2d 736, 742 (1993). In assessing whether an abuse of discretion has occurred, four factors are considered: (1) whether the amendment cures the defects in the pleadings; (2) whether the amendment is timely; (3) whether the movant had previous opportunities to amend; and (4) whether other parties would sustain prejudice or surprise by the amendment. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274-76, 586 N.E.2d 1211, 1216-17 (1992). Moreover, in medical malpractice actions, leave to amend may be granted more freely since "the plaintiff should be afforded every reasonable opportunity to establish his case." *Peterson v. Hinsdale Hospital*, 233 Ill. App. 3d 327, 332, 599 N.E.2d 84, 89 (1992). See also *Leask v. Hinrichs*, 232 Ill. App. 3d 332, 339, 595 N.E.2d 1343, 1347 (1992) ("[a]mendments to medical malpractice pleadings should be liberally allowed so that the case may be decided on its merits").

Plaintiff's second-amended complaint, adding agency allegations, certainly cures any of the defects that the trial court found in dismissing the complaint. The amendment was timely in that the request was made a little over nine months after the complaint had been refiled and before any defendants had filed an answer to the pending first-amended complaint. Moreover, plaintiff's request to amend was

only his second request to amend in this multicount, multiparty, complex medical malpractice action. Finally, neither Rush nor Northwestern could claim prejudice or surprise at plaintiff's request to amend or by the allegations contained therein. The amendment did not contain new causes of action so much as it stated more clearly the cause of action (agency) which had been suggested by the allegations in the earlier complaint. Furthermore, this request was necessitated only by the trial court's improper dismissal of plaintiff's first complaint on the grounds that plaintiff's section 2—622 report was insufficient. Finding that all four factors are satisfied, I believe the trial court abused its discretion in refusing to allow plaintiff's second request to amend.

For the reasons stated herein, I would reverse the trial court's dismissal with prejudice of defendants Rush and Northwestern from plaintiff's lawsuit and remand for further proceedings.